# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 7, 2010 Session

## JOANN ABSHURE ET AL. v. METHODIST HEALTHCARE-MEMPHIS HOSPITALS

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-004109-03      John R. McCarroll, Jr., Judge**

---

**No. W2008-01486-SC-R11-CV - Filed October 20, 2010**

---

This appeal involves a vicarious liability claim against a hospital based on the conduct of an emergency room physician. A patient and her husband filed a medical malpractice suit in the Circuit Court for Shelby County against a hospital and two physicians, one of whom had treated the patient in the hospital's emergency room. Among other things, the complaint broadly alleged that the hospital was vicariously liable for the conduct of its agents. After the plaintiffs voluntarily dismissed their claims against both physicians for the second time, the hospital sought the dismissal of the vicarious liability claims on the ground that the plaintiffs' claims against its apparent agent, the emergency room physician, were barred by operation of law. The trial court granted the hospital's motion, and the Court of Appeals affirmed the dismissal of the vicarious liability claims against the hospital. *Abshure v. Upshaw*, No. W2008-01486-COA-R3-CV, 2009 WL 690804, at *5 (Tenn. Ct. App. Mar. 17, 2009). We granted the Tenn. R. App. P. 11 application filed by the patient and her husband to determine whether their vicarious liability claims against the hospital should be dismissed under the facts of this case. We have determined that the lower courts erred by dismissing the vicarious liability claims against the hospital.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, GARY R. WADE, and SHARON G. LEE, JJ., joined.

Al H. Thomas and Kenneth R. Besser, Memphis, Tennessee, for the appellants, Joann Abshure and Billy Jack Abshure.

William L. Bomar, Buckner P. Wellford, and Jacob A. Dickerson, Memphis, Tennessee, for the appellee, Methodist Healthcare-Memphis Hospitals.

# OPINION

## I.[1]

Joann Abshure, a woman in her mid-sixties with a family history of colon and pancreatic cancer, complained of bloating and changes in her bowel patterns to Dr. Whitney T. Slade, her primary care physician. Dr. Slade advised her to have a colonoscopy. Dr. Jeremiah Upshaw performed the colonoscopy as an outpatient procedure on May 2, 2001 at the GI Diagnostic and Therapeutic Center in Memphis. Dr. Upshaw used a pediatric scope that was smaller in diameter and more flexible than a standard scope and reported in his operative notes that he encountered "an extremely tortuous colon with evidence of pelvic adhesions making the procedure more difficult."

Ms. Abshure experienced significant abdominal discomfort after she returned home. When Dr. Upshaw's office made a follow-up telephone call on May 3, 2001, Ms. Abshure reported that she had a great deal of soreness in her abdomen. Ms. Abshure began to have diarrhea on May 4, 2001, and the diarrhea was replaced by constipation on May 5, 2001. On May 6, 2001, while attempting to have a bowel movement, Ms. Abshure felt a popping sensation in her side.

Ms. Abshure's abdominal pain intensified, and she began to experience rectal pain and pressure. She became extremely nauseated and began vomiting. In response to his wife's worsening condition, Billy Jack Abshure called an ambulance, and Ms. Abshure was transported to Methodist Healthcare-Memphis Hospitals ("Methodist Hospital").

After Ms. Abshure arrived at the emergency room of Methodist Hospital at approximately 10:00 a.m. on May 6, 2001, she was examined by Dr. Luther C. Ogle III. The Abshures informed Dr. Ogle that Ms. Abshure had undergone a colonoscopy four days earlier on May 2, 2001, and they also told him about the popping sensation Ms. Abshure had experienced, as well as her abdominal and rectal pain and pressure.

Dr. Ogle noted Ms. Abshure's abdominal distention and ordered lab work, acute abdominal X-rays, and a CT scan of Ms. Abshure's abdomen. When the lab work and X-rays indicated that pancreatitis was unlikely and failed to reveal the presence of intraperitoneal air, Dr. Ogle ordered a series of enemas for Ms. Abshure before he received the results of the

---

[1] The facts set forth in this opinion are drawn from the current record on appeal. Because the parties have yet to have a full hearing with regard to many of these facts, our inclusion of any particular fact in this opinion should not be construed to be a conclusive finding of fact that prevents the parties from presenting additional evidence regarding the fact or to prevent the trial court from making different findings of fact based on the evidence actually presented by the parties.

CT scan.  Ms. Abshure was given two enemas between 1:55 p.m. and 2:35 p.m.  After an attending nurse removed a fecal impaction, Ms. Abshure received a third enema at 4:40 p.m.

By this time, Ms. Abshure was experiencing extraordinary pain and was administered stronger pain medication.  After the CT scan revealed the presence of free intraperitoneal air and fluid in Ms. Abshure's upper abdomen and the appearance of air and stool in the pelvis adjacent to her sigmoid colon, Dr. Clay Jones performed an emergency exploratory laparotomy that revealed a perforation of the sigmoid colon with fecal contamination of the peritoneum with secondary peritonitis.  Dr. Jones performed a colostomy on Ms. Abshure and left her surgical incision open after packing the wound with gauze and abdominal pads.

While Ms. Abshure was recovering in the intensive care unit, she developed adult respiratory distress syndrome and sepsis.  Many specialists were called in, including an infectious disease expert, a cardiologist, a pulmonologist, and an internist.  Dr. Jones eventually closed the surgical incision on May 30, 2001, and Ms. Abshure was discharged from Methodist Hospital with a colostomy on May 31, 2001.

Ms. Abshure filed suit in the Shelby County General Sessions Court against Methodist Hospital and Drs. Upshaw and Ogle. However, she voluntarily dismissed this suit on August 28, 2002.[2]  Less than one year later, on June 23, 2003, the Abshures filed suit in the Circuit Court for Shelby County against Methodist Hospital and Drs. Ogle and Upshaw.  The defendants filed timely answers denying liability.

On December 17, 2003, Dr. Upshaw moved for a summary judgment on the ground that the Abshures had been provided a reasonable opportunity to present expert testimony on negligence and causation and had failed to do so.  Dr. Ogle likewise moved for a summary judgment on September 16, 2004.  Before the trial court acted on the pending motions for summary judgment, the Abshures decided to voluntarily dismiss their claims against Drs. Upshaw and Ogle for the second time.  On July 8, 2005, the trial court entered an order dismissing the Abshures' claims against Drs. Upshaw and Ogle.[3]

---

[2]The parties have not included copies of the general sessions filings in this record, and their representations regarding the timing of these filings are not consistent.  None of these discrepancies, however, is material to the disposition of this case.

[3]While the trial court's July 8, 2005 order did not specify whether the dismissal of the Abshures' claims against Drs. Upshaw and Ogle was with or without prejudice, the claim is no longer viable.  It is undisputed that the Abshures ' second voluntary non-suit was taken outside of the protective scope of the saving statute.  Tenn. Code Ann. § 28-1-105(a) (2000).  Accordingly, any attempt to refile the claim against Drs. Upshaw and Ogle in the future is subject to dismissal pursuant to the statute of repose.  *See* Tenn. Code Ann. § 29-26-116(a)(3).

On May 2, 2008, nearly three years after the Abshures' voluntary dismissal of their claims against Drs. Upshaw and Ogle, Methodist Hospital filed a "motion to dismiss and/or for summary judgment." In this motion and in a supplemental memorandum of law, based upon the deposition of the Abshures' medical expert, Methodist Hospital argued that the Abshures' only claim against the hospital was premised on the hospital's vicarious liability for the acts of Dr. Ogle. The hospital then argued that the Abshures' claims against Dr. Ogle were now barred by operation of law by the statute of repose for medical malpractice actions and by Tenn. R. Civ. P. 41.01(2).[4]

On July 2, 2008, the trial court filed a detailed order granting Methodist Hospital's motion for summary judgment on four grounds. First, the trial court concluded that Methodist Hospital did not have adequate notice of the Abshures' vicarious liability claim because the allegations in their complaint were deficient. Second, the trial court concluded that the Abshures could not pursue their vicarious liability claims against Methodist Hospital because the statute of repose had extinguished their claims against Dr. Ogle. Third, the trial court concluded that the Abshures could not pursue their vicarious liability claims against Methodist Hospital because, by operation of Tenn. R. Civ. P. 41.01(2), their second voluntary nonsuit of their claims against Dr. Ogle extinguished their claims against him by operation of law. Fourth, the trial court concluded the Abshures' second voluntary nonsuit conferred an affirmative substantive right on Dr. Ogle precluding an assessment of liability against him.

The Abshures appealed to the Court of Appeals. In an opinion filed on March 17, 2009, the appellate court determined that the Abshures had adequately pleaded their vicarious liability claim. *Abshure v. Upshaw*, No. W2008-01486-COA-R3-CV, 2009 WL 690804, at *6 (Tenn. Ct. App. Mar. 17, 2009). The court also held that "where an initial claim is timely filed, the expiration of the statute of repose will not extinguish a claim for vicarious liability by operation of law where the plaintiff voluntarily nonsuits his action . . . ." *Abshure v. Upshaw*, 2009 WL 690804, at *7.

However, the Court of Appeals also determined that by taking the second voluntary nonsuit, "the Abshures' right of action against Dr. Ogle has been extinguished by operation of law and . . . the Abshures have conferred upon Dr. Ogle an affirmative substantive right that precludes an assessment of liability against him." *Abshure v. Upshaw*, 2009 WL 690804, at *8. Accordingly, the court affirmed the summary judgment because Methodist Hospital could not, as a matter of law, be held vicariously liable for Dr. Ogle's actions. *See Abshure v. Upshaw*, 2009 WL 690804, at *7-10.

---

[4]Methodist Hospital also asserted that Dr. Ogle was not its agent and that the doctrine of apparent agency was not applicable. The trial court never addressed these arguments, and the parties have not raised them on this appeal.

We granted the Abshures' Tenn. R. App. P. 11 application for permission to appeal. Before this Court, the Abshures insist that the limitations on a principal's vicarious liability for acts of its agents do not apply to the circumstances of this case. Methodist Hospital responds that the Court of Appeals properly applied those limitations in this case. Methodist Hospital also argues that the Court of Appeals erred by concluding that the Abshures' complaint sufficiently states a claim for vicarious liability.

## II.

The facts material to the disposition of this case are not disputed. Accordingly, a motion for summary judgment provides a proper vehicle for addressing the dispositive legal issues presented by the parties. Methodist Hospital is entitled to a summary dismissal of the Abshures' vicarious liability claims only if the facts and the inferences reasonably drawn from the facts, viewed in the light most favorable to the Abshures and discarding all countervailing evidence, demonstrate that it is entitled to a judgment as a matter of law. *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002).

Because summary judgments involve questions of law, they are not entitled to the presumption of correctness on appeal. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007). Rather, the reviewing courts must make a fresh determination regarding whether the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009); *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008).

## III.

Methodist Hospital's liability to the Abshures, if in fact Methodist Hospital can be found liable to the Abshures, rests on vicarious liability claims. Accordingly, as a threshold issue, we will address the hospital's argument that the Court of Appeals erred by reversing the trial court's conclusion that the Abshures had not sufficiently pleaded their vicarious liability claim. While the Abshures' complaint falls short of a textbook example of a vicarious liability claim, we agree with the Court of Appeals' conclusion that it satisfies the minimum pleading requirements.

## A.

Tenn. R. Civ. P. 8.01 requires that a pleading in a civil case set forth a claim for relief that contains "(1) a short and plain statement of the claim showing that the pleader is entitled to relief; and (2) a demand for judgment for the relief the pleader seeks." Vicarious liability

claims are not among the claims that are subject to the heightened pleading requirements in Tenn. R. Civ. P. 9.02.

An essential purpose of a pleading is to give notice of the issues to be tried so that the opposing party will be able to prepare for trial. *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002); *Poster v. Andrews*, 182 Tenn. 671, 677, 189 S.W.2d 580, 582 (1943). While a complaint need not contain detailed allegations of all the facts giving rise to the claim, *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 399 (Tenn. 2002), it must show that the "pleader is entitled to relief." *Adams v. Carter Cnty. Mem'l Hosp.*, 548 S.W.2d 307, 308-09 (Tenn. 1977). Thus, a complaint must contain sufficient factual allegations to articulate a claim for relief. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001). The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004) ("*Federal Practice and Procedure*") ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."); *see also Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977) (quoting *Federal Practice and Procedure* § 1216).

When the courts are called upon to analyze the adequacy of a pleading, they should construe the pleading liberally in favor of the pleader. *Holloway v. Putnam Cnty.*, 534 S.W.2d 292, 296 (Tenn. 1976). Reviewing courts should avoid construing pleadings in an artificial, technical sense. *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d at 300. They should construe the pleading's language fairly and naturally, *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d at 300, and should give effect to the substance of the pleading rather than its form. *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn. Ct. App. 1986); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1997).

**B.**

The Abshures' complaint contains a short, plain statement asserting a claim against Methodist Hospital based on the acts of its agents. Paragraph 20 states:

> Defendant Methodist Healthcare Memphis Hospital was negligent in not seeing that proper care was furnished to Plaintiff Abshure, and further *Methodist Healthcare Memphis Hospitals' agents and/or employees were negligent in the medical care and attention rendered to Plaintiff* and did not exercise the degree of care, skill, and diligence used by medical facilities and their staff generally and under the circumstances which presented themselves, including but not limited to the

-6-

> choice of medical techniques employed by Methodist Healthcare
> Memphis Hospitals in caring for Plaintiff.

(emphasis added). The complaint also alleges that the Abshures contacted an ambulance to be taken to Methodist Hospital and that Ms. Abshure was treated by Dr. Ogle after she arrived at Methodist Hospital.[5] The complaint expressly identifies the nurses at Methodist Hospital as employees of the hospital and is broad enough to include, at least by implication, Dr. Ogle as a potential agent of the hospital. The Abshures also alleged that Dr. Ogle's actions in treating Ms. Abshure while she was a patient of Methodist Hospital were medically negligent and caused a worsening of Ms. Abshure's condition resulting in serious and permanent harm.

At no point during the proceedings below did Methodist Hospital assert that it lacked sufficient information to either admit or deny the allegations contained in Paragraph 20 of the Abshures' complaint. To the contrary, the hospital categorically declared in its answer that "[a]ll allegations found in paragraph 20 are denied." If Memphis Hospital had concerns about the vagueness of the reference to agents in Paragraph 20, Tenn. R. Civ. P. 12.05 provided them with a vehicle for obtaining a more definite statement. The record contains no indication that Methodist Hospital pursued this course.

The better course would have been for the Abshures to allege specifically that Dr. Ogle was acting as an agent of the hospital when he treated Ms. Abshure in the emergency room. However, this lack of specificity is not fatal to the Abshures' complaint. We agree with the Court of Appeals that Paragraph 20 of the complaint put Methodist Hospital on notice that the Abshures were holding the hospital liable for the conduct of its agents and that Dr. Ogle was potentially one of those agents.

**IV.**

The central issue in this case is whether the Abshures' complaint against Methodist Hospital asserting vicarious liability for the conduct of the hospital's agents, including Dr. Ogle, must be dismissed because the Abshures' direct claims against Dr. Ogle became barred after they filed their complaint against Methodist Hospital. This is not the first time this Court has been confronted with questions regarding the limitations that should be placed on

---

[5]The actual and apparent agency relationships between hospitals and emergency room physicians have received considerable attention from Tennessee's appellate courts. *See, e.g., Boren ex rel. Boren v. Weeks*, 251 S.W.3d 426, 432-37 (Tenn. 2008); *White v. Methodist Hosp. South*, 844 S.W.2d 642, 646-48 (Tenn. Ct. App. 1992). The facts alleged in the Abshures' complaint lay a foundation for a claim based on the apparent agency relationship between the hospital and Dr. Ogle. *See Boren ex rel. Boren v. Weeks*, 251 S.W.3d at 436.

the ability of plaintiffs to pursue vicarious liability claims against a principal without also pursuing claims directly against the agent.

**A.**

It has long been recognized in Tennessee that a principal may be held vicariously liable for the negligent acts of its agent when the acts are within the actual or apparent scope of the agent's authority.[6] It is also generally recognized that a plaintiff may sue a principal based on its vicarious liability for the tortious conduct of its agents without suing the agent.[7] Even where the agent's conduct is the sole basis for the principal's liability, the agent remains a "proper, but not a necessary" party.[8] Thus, a plaintiff is free to sue the agent, the principal, or both.[9] This common-law framework is well-established in Tennessee law.[10]

Notwithstanding the general rule permitting a plaintiff to file suit against the principal, the agent, or both, the courts have recognized that there are certain circumstances in which it would be improper to permit a plaintiff to proceed solely against a principal based on its vicarious liability for the conduct of an agent. The orderly development of the common-law in Tennessee has identified four such circumstances. These circumstances include: (1) when the agent has been exonerated by a finding of non-liability; (2) when the plaintiff has settled its claim against the agent; (3) when the agent is immune from suit, either by statute or by the

---

[6]*See, e.g., Cox v. M.A. Primary and Urgent Care Clinic*, 313 S.W.3d 240, 251 (Tenn. 2010); *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.*, 595 S.W.2d 474, 483 (Tenn. 1980); *see also Ohio Life Ins. & Trust Co. v. Merchs. Trust Co.*, 30 Tenn. (11 Hum.) 1, 30 (1850); *Nunnelly v. Goodwin*, 39 S.W. 855, 859 (Tenn. Ch. App. 1896).

[7]*See, e.g., Yamane v. Pohlson*, 137 P.3d 980, 990 (Haw. 2006); *Wiedenfeld v. Chicago & Nw. Transp. Co.*, 252 N.W.2d 691, 695 (Iowa 1977); *Kocsis v. Harrison*, 543 N.W.2d 164, 169 (Neb. 1996); *Erdmann v. Thomas*, 446 N.W.2d 245, 249 (N.D. 1989); *Wiebe v. Seely*, 335 P.2d 379, 390 (Or. 1959); *Lane v. Home Ins. Co.*, 2 S.E.2d 30, 32 (S.C. 1939).

[8] Warren A. Seavey, *Law of Agency* §95(A), at 169 (1964).

[9]*See, e.g., Miller v. Staples*, 32 P. 81, 81 (Colo. App. 1893); *Cascarella v. Nat'l Grocer Co.*, 114 N.W. 857, 858 (Mich.1908); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009 OH 3601, ¶¶ 21-22, 913 N.E.2d 939, 944; *Parlin & Orendorff Co. v. Miller*, 60 S.W. 881, 882 (Tex. Civ. App. 1901); *see also* Frank B. Cross & Roger LeRoy Miller, *The Legal Environment of Business: Text and Cases -- Ethical, Regulatory, Global, and E-Commerce Issues* 497 (2008).

[10]*See, e.g., McGee v. Wilson Cnty.*, 574 S.W.2d 744, 746 (Tenn. Ct. App. 1978); *Rankhorn v. Sealtest Foods*, 63 Tenn. App. 714, 722, 479 S.W.2d 649, 652 (1971); *Williams v. Pritchard*, 43 Tenn. App. 140, 145-46, 306 S.W.2d 46, 49 (Tenn. Ct. App. 1957); *see also Campbell v. Corr. Corp. of Am.*, No. M1999-01082-COA-R3-CV, 2001 WL 921888, at *4 (Tenn. Ct. App. Aug. 7, 2001) (No Tenn. R. App. P. 11 application filed).

common law; and (4) when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal.

This case requires us to revisit these limitations on a plaintiff's right to pursue a vicarious liability claim against a principal. Methodist Hospital insists that the Abshures should be precluded from pursuing their vicarious liability claim because their claim against Dr. Ogle is now barred by operation of Tenn. R. Civ. P. 41.01(2) and by the expiration of the savings statute, Tenn. Code Ann. § 28-1-105(a) (2000). The Abshures assert that dismissing their vicarious liability claim against the hospital is unwarranted. Both Methodist Hospital and the Abshures contend that their respective positions align neatly with Tennessee's common law with regard to limitations on vicarious liability suits against principals for the acts of their agents.

**B.**

The first common-law limitation to emerge in Tennessee regarding a plaintiff's ability to pursue a vicarious liability claim against a principal appeared in *D.B. Loveman Co. v. Bayless*, 128 Tenn. 307, 160 S.W. 841 (1913). A former employee who was accused of stealing filed suit against his former employer and two fellow employees. The claims against the employer were predicated on acts of the employees. A jury returned a plaintiff's verdict against the employer but returned a defendant's verdict in favor of the two employees. *D.B. Loveman Co. v. Bayless*, 128 Tenn. at 309-12, 160 S.W. at 841-42.

This Court vacated the judgment against the employer on the ground that it was untenable to hold the principal vicariously liable for improper acts of its agents when the agents themselves had been found not to have committed any improper acts. *See D.B. Loveman Co. v. Bayless*, 128 Tenn. at 312-13, 160 S.W. at 842. Accordingly, we adopted the following rule:

> When the [principal] is sued solely for misfeasance, or nonfeasance, on the part of his [agents], being liable for their conduct only under the doctrine of respondeat superior, a verdict, permitted to stand in favor of such [agents], either in an action where they are sued with the [principal], or in a prior action, entitles the [principal] to a discharge from such claimed liability.

*D.B. Loveman Co. v. Bayless*, 128 Tenn. at 312, 160 S.W. at 842. We also explained the reasons for this rule as follows:

The reason on which the conclusion rests, in cases involving [principal and agent], is that where the [agent] by whose act the injury occurred is exonerated it is contradictory and absurd to find the [principal] guilty on the same evidence; that the [agent]'s liability is primary, that of the [principal] secondary, or derivative, depending wholly on his [or her] duty to respond for the fault of his [or her] [agent] in the line of his employment . . . . [Everyone] is entitled to his [or her] day in court, and no more, on the same cause of action; that he [or she] has enjoyed this right when he [or she] has contested the matter with persons committing the wrong and primarily liable, and has been cast in such suit; that to permit him [or her] after this to contest the matter with one only secondarily liable would be to give him [or her] two suits upon the same cause of action.

*D.B. Loveman Co. v. Bayless*, 128 Tenn. at 315-16, 160 S.W. at 843.

In 2002, this Court restated the holding in *D.B. Loveman v. Bayless* as follows: "[a] principal may not be held vicariously liable under the doctrine of respondeat superior based upon the acts of its agent . . . when the agent has been exonerated by an adjudication of non-liability." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 345 (Tenn. 2002). Thus, where "the injured party sue[s] the actual wrongdoer and los[es] the action on a merits determination, the judgment in that case preclude[s] the injured party from suing the merely vicariously responsible party, as his liability [is] purely derivative." 1 Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 5:16, at 537 (2010).

**C.**

Tennessee's courts have recognized a second limitation on a plaintiff's ability to assert a vicarious liability claim against a principal for the conduct of its agents. This limitation occurs when "the injured party extinguishes the agent's liability by conferring an affirmative, substantive right upon the agent that precludes assessment of liability against the agent." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345. Alternatively, Tennessee courts have recognized that plaintiffs should not be permitted to pursue a vicarious liability claim against a principal when they have settled with the agent and have agreed not to pursue a claim against the agent. *See, e.g.*, *Tutton v. Patterson*, 714 S.W.2d 268, 269, 271 (Tenn. 1986); *Craven v. Lawson*, 534 S.W.2d 653, 654, 656-57 (Tenn. 1976); *Stewart v. Craig*, 208 Tenn. 212, 218, 344 S.W.2d 761, 763 (1961); *Olympia Child Dev. Ctr., Inc. v. City of Maryville*, 59 S.W.3d 128, 134-35 (Tenn. Ct. App. 2001); *McGee v. Wilson Cnty.*, 574 S.W.2d at 747; *see also Rankhorn v. Sealtest Foods*, 63 Tenn. App. at 721, 479 S.W.2d at

652 (noting that this limitation does not apply to a plaintiff who nonsuited her claim against the agent who received no "satisfaction or recovery").

While our courts have not clearly explained the reasons why plaintiffs who settle their claims against an agent should not be permitted to pursue vicarious liability claims against the principal, the reasons for this rule have been discussed by others. The District of Columbia Court of Appeals has noted that

> [b]etween the late nineteenth and mid-twentieth century, a majority of courts adopted the common law rule that a valid release of an agent for tortious conduct releases the principal when the plaintiff's claim is based on vicarious liability.[11] The rationale articulated . . . rested on different theories, but the driving force behind the common law rule appeared to be that in the absence of the rule a plaintiff could receive more than one satisfaction for her injury.

*Convit v. Wilson*, 980 A.2d 1104, 1115-16 (D.C. 2009) (footnotes omitted) (footnote added).[12] In addition, the *Restatement (Third) of Torts: Apportionment of Liability* provides

---

[11] In recent years, the near universality of this rule has broken down with the effect of releases or covenants not to sue on actions against principals having become a matter of considerable debate, disagreement, and variance in the state courts. *See generally* J.D. Lee & Barry Lindahl, 1 *Modern Tort Law: Liability and Litigation* § 7:17 (2d ed. 2010). Arguably much of this tumult is attributable to language in the Uniform Contribution Among Tortfeasors Act, *see Convit v. Wilson* 980 A.2d at 1116 & n.32. Even though Tennessee has adopted critical provisions of the uniform act, this Court has rejected the argument that these provisions are applicable to the extinguishment of suits against principals where the plaintiff settles with an agent. *See Craven v. Lawson*, 534 S.W.2d at 656-57.

[12] The Kentucky Court of Appeals has discussed the application of this rule in the context of a vicarious liability claim against a hospital. The court noted:

> The [plaintiffs] had but one cause of action which the law gave to compensate them for their daughter's injuries. This cause of action for the allegedly tortious conduct of [the anesthesiologists] was assertable against the hospital only because [the anesthesiologists] were allegedly acting in their function as employees or ostensible agents of the hospital at the time they committed the negligent act causing [the plaintiffs' daughter's] injury. When [the anesthesiologists] entered into the structured settlement agreement with the [the plaintiffs], they repaired the wrong that they had done and therefore were fully acquitted from further liability. This acquittance inured to the benefit of the hospital, for the discharge of the primary tortfeasor ([the anesthesiologists]) must be held to discharge the secondary tortfeasor (the hospital) also from further responsibility, as the hospital's liability for the tortious act was vicarious in nature and derived solely from its legal relation to the wrongdoer, [the anesthesiologists].

(continued...)

that a settlement with an agent will extinguish a principal's liability for the actions of the agent, even though a mere voluntary dismissal will not.[13] *See Restatement (Third) of Torts: Apportionment of Liability* § 7 cmt. j, at 69 (2000); *Restatement (Third) of Torts: Apportionment of Liability* § 16 cmt. d, at 136-37; *see generally Restatement (Third) of Torts: Apportionment of Liability* § 16 reporters' note cmt. d, at 144-45 (addressing the complexities caused by settlements including issues related to indemnification between agents and principals and windfalls for plaintiffs).

**D.**

The third limitation on a plaintiff's ability to assert a vicarious liability claim against a principal arises when the agent is immune from suit under the common law or by statute. The foundational case for this exclusion is *Raines v. Mercer*, 165 Tenn. 415, 55 S.W.2d 263 (1932). The case involved a woman who was injured while riding as a passenger in an automobile driven by her fiancé. The woman filed suit against her future father-in-law claiming that he was vicariously liable for the negligence of his son. After the plaintiff married her fiancé, her father-in-law argued that he could not be held liable for the conduct of his son based on the common-law "marital unity" rule.[14] *Raines v. Mercer*, 165 Tenn. at 417-19, 55 S.W.2d at 263-64.

This Court held that "[t]he marital unity extinguished the right of action against her husband, and, since she could not recover from him, she could not recover from his father." *Raines v. Mercer*, 165 Tenn. at 420-21, 55 S.W.2d at 264. Later, the Court used similar reasoning in cases involving child-parent immunity bars. In these cases, the Court held that a minor child may not recover damages against a parent's employer based on the parent's negligent acts. *Smith v. Henson*, 214 Tenn. 541, 551-52, 381 S.W.2d 892, 897 (1964); *Graham v. Miller*, 182 Tenn. 434, 436-42, 187 S.W.2d 622, 623-26 (1945).

The most recent case involving the immunity limitation to vicarious liability claims is *Johnson v. LeBonheur Children's Medical Center*. The case involved a medical

_____

[12](...continued)
*Copeland v. Humana of Ky., Inc.*, 769 S.W.2d 67, 70 (Ky. Ct. App. 1989). Similarly, the Iowa Supreme Court concluded that by settling with the agent, the plaintiff "satisfied the percentage of fault attributable to [agent] and, vicariously, attributable to the [the principal]. That is, the settlement wiped out any fault derived from the [agent's] conduct . . . ." *Biddle v. Sartori Mem'l Hosp.*, 518 N.W.2d 795, 799 (Iowa 1994).

[13] The Restatement does not extend this rule to circumstances covered by Tenn. R. Civ. P. 41.01(2).

[14] The common-law "marital unity" rule provided that "all rights of action for antenuptial wrongs of the husband to the wife are extinguished by their marriage" because a husband and wife were "declar[ed] . . . to be one person." *Raines v. Mercer*, 165 Tenn. at 419, 55 S.W.2d at 264. This bar on such interspousal tort litigation was eliminated in *Davis v. Davis*, 657 S.W.2d 753, 759 (Tenn. 1983).

malpractice claim against a Memphis hospital based on the acts of two physicians who were practicing at the hospital as part of the University of Tennessee College of Medicine's resident training program. The hospital asserted, among other things, that it could not be held liable for the acts of the resident physicians because, as state employees, these physicians were immune from suit. Both the trial court and the Court of Appeals concluded that the hospital could be held vicariously liable for the acts of the resident physicians. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 341-42.

Responding to the hospital's argument based on the resident physician's immunity, this Court acknowledged that vicarious liability claims against a principal may be barred "when the right of action against the agent is extinguished by operation of law." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345. However, we concluded that the patient's claims against the hospital were not extinguished by operation of law (the statutory immunity of the individual resident physicians) because the physicians' employer was still subject to liability before the Board of Claims. *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345-46. Even though the private hospital could not seek indemnification from the agents, we concluded "that a private hospital may be held vicariously liable under the doctrine of respondeat superior solely for the acts of a state-employed physician resident when that resident is . . . the agent . . . of the hospital." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 346-47.

**E.**

During the years since *Johnson v. LeBonheur Children's Medical Center* was decided, both plaintiffs and principals have tested the limits of the practical application and scope of the exclusion of vicarious liability claims against principals "when the right of action against the agent is extinguished by operation of law." *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345. Because rights of action may be extinguished by operation of law in many different ways, the courts have been given the opportunity to address circumstances in which a plaintiff's claim against an agent has been barred by operation of legal principles that do not involve either common-law or statutory immunity. Two of these cases dealt with the procedural bars associated with the statute of repose and the res judicata doctrine.

In 2008, the Court of Appeals addressed a circumstance in which the plaintiff's claim against an agent became barred by operation of a statute of repose. *Huber v. Marlow*, No. E2007-01879-COA-R9- CV, 2008 WL 2199827 (Tenn. Ct. App. May 28, 2008) (Tenn. R. App. P. 11 application voluntarily dismissed). The plaintiffs filed suit against the principal based on the principal's own negligence. However, the plaintiffs failed to include in their complaint a vicarious liability claim against the principal based on the conduct of its agents. When the plaintiffs realized that the principal's liability arose from the negligence of its agent, they attempted to amend their complaint to assert a vicarious liability claim against the

principal. By that time, however, the statute of repose had run with regard to the claims that the plaintiffs could have asserted against the agent. The Court of Appeals held that the plaintiffs could not amend their complaint to add a vicarious liability claim against the principal because their claims against the agent had been extinguished by operation of law – the running of the statute of repose. *Huber v. Marlow*, 2008 WL 2199827, at *3- 4.

Last year, this Court addressed the question of whether the operation of the doctrine of res judicata with regard to claims against agents prevented the plaintiffs from pursuing a vicarious liability claim against the principal. *Creech v. Addington*, 281 S.W.3d 363 (Tenn. 2009). While this case has a complicated procedural history, it is essentially a late amendment case similar to *Huber v. Marlow*.

The plaintiffs in *Creech v. Addington*, who claimed that they had been swindled in a complicated real estate investment scheme, sued numerous defendants, including a principal and its agents. While the complaint contained claims based on alleged misrepresentations by each of the defendants, it did not assert that the principal was vicariously liable for the misrepresentations of its agents. *Creech v. Addington*, 281 S.W.3d at 371-72 & nn. 10-11. Eventually, the plaintiffs attempted to amend their complaint to add a vicarious liability claim against the principal. By that time, however, their claims against the agents had been extinguished by the doctrine of res judicata. *Creech v. Addington*, 281 S.W.3d at 371-72, 376-83. We concluded that the plaintiffs could not pursue their vicarious liability claim against the principal because the doctrine of res judicata had extinguished their claims against the agents by operation of law. *Creech v. Addington*, 281 S.W.3d at 376-383.

The decisions in *Creech v. Addington* and *Huber v. Marlow* reflect a fourth limitation on a plaintiff's ability to assert a vicarious liability claim. This limitation arises when the plaintiff attempts to assert a vicarious liability claim against the principal after its right to assert a claim against the agent has become procedurally barred. It reflects one of the traditional policy reasons for refusing to permit a plaintiff to pursue a vicarious liability claim against a principal – plaintiffs should not be permitted to engage in an "encircling movement" against the principal when they cannot pursue a "frontal attack" on the agent. *Graham v. Miller*, 182 Tenn. at 441-42, 187 S.W.2d at 625-26; *Raines v. Mercer*, 165 Tenn. at 420, 55 S.W.2d at 264; *see also Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345-46; *Huber v. Marlow*, 2008 WL 2199827, at *5 (ruling that the plaintiff could not make "an 'end run' around the statute of repose" by amending their complaint to raise a vicarious liability claim).

In both *Creech v. Addington* and *Huber v. Marlow*, the plaintiffs initially sued the principals but did not assert vicarious liability claims against them. While the plaintiffs' claims against the principal were pending, they lost their opportunity to mount a "frontal attack" on the agent or agents. In *Huber v. Marlow*, the statute of repose governing the

-14-

claims against the agent ran. In *Creech v. Addington*, the doctrine of res judicata prevented the plaintiffs from resurrecting their previously dismissed claims against the agents. Thus, the plaintiffs' belated efforts to amend their complaints against the principals to add a vicarious liability claim were found to be nothing more than the sort of "encircling movement" prohibited by *Graham v. Miller* and *Raines v. Mercer*.

The decisions in both *Creech v. Addington* and *Huber v. Marlow* were heavily influenced by the fact that the plaintiffs did not assert a vicarious liability claim against the principal when they first filed suit, even though they could have. In *Huber v. Marlow*, the court emphasized that the plaintiffs' attempt to amend their complaint to assert a vicarious liability claim against the principal was untimely because it came after the statute of repose governing claims against the agent had run. *Huber v. Marlow*, 2008 WL 2199827, at *1-5.[15] Similarly, in *Creech v. Addington*, we noted that instead of filing their vicarious liability claim against the principal when they filed their original complaint, the plaintiffs delayed asserting their vicarious liability claim against the principal until after the doctrine of res judicata barred their claims against the agents. *Creech v. Addington*, 281 S.W.3d at 371-72 & nn. 10-11, 376-83.

Thus, the procedural limitation on the plaintiff's ability to pursue a vicarious liability claim against a principal recognized in *Creech v. Addington* and *Huber v. Marlow* is triggered only when a plaintiff belatedly attempts to amend its complaint to add a new vicarious liability claim against a principal after its claims against the agent have become barred by operation of law. The limitation does not apply in circumstances where the plaintiff has initially filed a vicarious liability claim against the principal, and the plaintiff's claims against the principal's agents are later extinguished by operation of law.

Extending the procedural limitation recognized in *Creech v. Addington* and *Huber v. Marlow* to plaintiffs who have included a vicarious liability claim in their original complaint would be contrary to the traditional principle that plaintiffs may elect to sue the principal, the agent, or both. In circumstances where the plaintiff has properly asserted a vicarious liability claim against the principal, the extinguishment of the plaintiff's claims against the agent, by voluntary dismissal or otherwise, "merely produce[s] the same effect as if the [agent] had never been sued . . . ." *Rankhorn v. Sealtest Foods*, 63 Tenn. App. at 721, 479 S.W.2d at 652.

---

[15] Accordingly, one commentator noted that the lesson of *Huber v. Marlow* is that "lawsuits brought . . . under the doctrine of respondeat superior must be filed within the statute of repose applicable to the tortious employee." Natasha W. Campbell, *When an Employer's Only Liability Is Based on Action of a "Nonparty Employee", the Employer Cannot Be Held Vicariously Liable After the Statute of Repose Has Run Against That "Nonparty Employee"*, 10 Transactions: Tenn. J. Bus. L. 119, 120 (2008).

**F.**

We now apply these principles to the two bases of the Court of Appeals' decision to affirm Methodist Hospital's summary judgment. The court first reasoned that the Abshures' second voluntary dismissal of their claims against Dr. Ogle was "the substantive equivalent of a covenant not to sue" and, therefore, that the Abshures should be barred from suing the hospital under the "third instance" of nonliability identified in *Johnson v. LeBonheur Children's Medical Center*. *Abshure v. Upshaw*, 2009 WL 690804, at *9. We cannot concur with this conclusion. The limitation on a principal's liability that arises "when the injured party extinguishes the agent's liability by conferring an affirmative, substantive right upon the agent that precludes assessment of liability against the agent"[16] applies to settlements between the plaintiffs and agents. This record does not reflect that the Abshures reached a settlement with Dr. Ogle when they voluntarily dismissed their claims against him. To the contrary, it appears that the Abshures gratuitously dismissed these claims.

The Court of Appeals also held that the Abshures should not be permitted to pursue vicarious liability claims against Methodist Hospital because their right of action against Dr. Ogle had been extinguished by operation of law.[17] The court noted that both Tenn. R. Civ. P. 41.01(2) and the statute of repose in Tenn. Code Ann. § 29-26-116(a)(3) (2000) barred the Abshures from pursuing any claims against Dr. Ogle. While we agree that the Abshures' claims against Dr. Ogle have been extinguished by operation of law, we do not agree that their vicarious liability claims against Methodist Hospital should also be extinguished. The Abshures filed a proper vicarious liability claim against Methodist Hospital before their claims against Dr. Ogle were extinguished by operation of law. Accordingly, the subsequent procedural bar of their claims against Dr. Ogle does not prevent the Abshures from pursuing their timely filed vicarious liability claim against the hospital.

**V.**

The judgment of the Court of Appeals affirming the summary judgment dismissing the Abshures' vicarious liability claims against Methodist Hospital is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed to the Methodist Healthcare Memphis Hospital for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE

---

[16] *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345.

[17] *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d at 345.