# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### April 6, 2022 Session

## DENNIS HAROLD ULTSCH v. HTI MEMORIAL HOSPITAL CORPORATION

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Davidson County**
**No. 19C1086      Joseph P. Binkley, Jr., Judge**

_____

### No. M2020-00341-SC-R11-CV

_____

JEFFREY S. BIVINS, J., delivered the opinion of the Court with respect to part II(A), in which ROGER A. PAGE, C.J., and SHARON G. LEE, J., join, and an opinion dissenting in part, in which ROGER A. PAGE, C.J., joins.

This appeal requires this Court to examine the intersection of a common law principle pertaining broadly to vicarious liability, known as the operation-of-law exception, and a series of relatively recent legislative enactments that apply to health care liability actions, known as the Health Care Liability Act ("HCLA"). The result reached by a majority of the Court turns on the longstanding rule that "[w]hen there is a conflict between the common law and a statute, the provision of the statute must prevail." Graves v. Ill. Cent. R.R. Co., 148 S.W. 239, 242 (Tenn. 1912). The majority chooses not to give effect to the operation-of-law exception under the circumstances of this case, concluding that it would conflict with provisions of the HCLA. In my view, however, the majority abrogates the common law principle despite the lack of direct conflict between it and the HCLA. Applying the operation-of-law exception in this case, I would affirm the judgment of the trial court dismissing the vicarious liability claim against the principal because suit was filed after any health care liability claims against the principal's agents were procedurally barred by the applicable statute of limitations. Accordingly, I respectfully dissent from the result reached by the majority.

## I. FACTUAL AND LEGAL BACKGROUND

The majority has fully described the factual and legal background of this case. I will repeat here only those points most salient to my analysis of the issues presented in this appeal.

On December 21, 2018, Dennis Harold Ultsch, as next of kin for Sheila Carol Warren, ("the Plaintiff") gave pre-suit notice of a potential health care liability claim to HTI Memorial Hospital Corporation ("the Defendant") related to the death of Ms. Warren. See Tenn. Code Ann. § 29-26-121(a)(1) (2012 & Supp. 2022). Ms. Warren passed away on January 12, 2018. The Plaintiff sent pre-suit notice solely to the Defendant. On May 6, 2019, the Plaintiff filed a health care liability action against the Defendant, alleging in part vicarious liability "for the acts or omissions of its employees and/or agents."

At the time the Plaintiff filed suit, the General Assembly had enacted a series of provisions—the HCLA—that apply to what are now known as health care liability actions. As the majority points out, the HCLA established a number of procedural requirements specific to health care liability actions. Among them is a requirement that persons seeking to pursue a health care liability action must provide pre-suit notice to "each health care provider that will be a named defendant" and wait a minimum prescribed period of time before filing suit. Tenn. Code Ann. § 29-26-121(a)(1). When a plaintiff has complied with the pre-suit notice requirement, "the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider." Id. § 29-26-121(c) (2012 & Supp. 2022). As a general matter, the statute of limitations in a health care liability action is one year from the date the cause of action accrued. Id. §§ 28-3-104(a)(1) (2017), 29-26-116(a)(1) (2012).

Of course, what are now known as health care liability actions pre-date the legislative enactments of the HCLA, and governing principles previously developed over time through the common law. In particular, certain principles relevant to vicarious liability developed through the common law before the emergence of the HCLA. These principles applied broadly, including to what were formerly known as medical malpractice actions. See, e.g., Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 100 (Tenn. 2010) (involving a medical malpractice suit against a hospital and individual health care providers alleging, in part, that the hospital was vicariously liable for the conduct of its agents); Johnson v. LeBonheur Child.'s Med. Ctr., 74 S.W.3d 338, 341 (Tenn. 2002) (same). Among these principles addressing vicarious liability is the general rule that ordinarily "a plaintiff may sue a principal based on its vicarious liability for the tortious conduct of its agents without suing the agent." Abshure, 325 S.W.3d at 105. However, through the common law, this Court identified certain exceptions to the general rule, recognizing that in those situations "it would be improper to permit a plaintiff to proceed solely against a principal based on its vicarious liability for the conduct of an agent." Id. at 106. Of particular import for this case, this Court recognized that it would be improper to permit a plaintiff to proceed solely against a principal based on its vicarious liability for the conduct of an agent "when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the

principal." Id.; see also Creech v. Addington, 281 S.W.3d 363, 366 (Tenn. 2009). I will refer to this principle as the operation-of-law exception.

Certain relevant points flow from the background detailed above. First, the Plaintiff provided pre-suit notice to the Defendant before the one-year statute of limitations applicable to a health care liability claim expired. Second, the Plaintiff provided pre-suit notice only to the Defendant. Third, when the Plaintiff filed suit against the Defendant, the one-year statute of limitations applicable to health care liability claims against the Defendant's employees and/or agents had expired. Fourth, the Plaintiff, however, did file suit before the expiration of the extension of the statute of limitations provided by the HCLA as to the Defendant. Fifth, the Plaintiff's complaint alleged, in pertinent part, that the Defendant was "vicariously liable to plaintiff under the theory of *respondent* [sic] *superior* for the acts or omissions of its employees and/or agents."

## II. ANALYSIS

In the trial court, the Defendant moved to dismiss the Plaintiff's vicarious liability claim based on the operation-of-law exception. The Defendant pointed out that the Plaintiff filed suit more than one year after Ms. Warren's death, and thus, the statute of limitations had expired as to the Defendant's employees and/or agents. The Defendant argued that because any health care liability claims against the Defendant's employees and/or agents were barred by operation of law—that is, by the expiration of the statute of limitations applicable to those claims—it would be improper to permit the Plaintiff to proceed solely against the Defendant as principal. The trial court agreed and granted the Defendant's motion. Consistent with one of the Plaintiff's arguments, a majority of the Court now holds that applying the operation-of-law exception under the circumstances of this case would conflict with certain provisions of the HCLA, and therefore, the common law principle must yield to the HCLA. I respectfully disagree.

*A. Application of the Operation-of-Law Exception Precludes the Plaintiff's Vicarious Liability Claim*

The trial court found that at the time the Plaintiff filed suit, any health care liability claims against the Defendant's employees and/or agents were barred by operation of law, that is, by the expiration of the one-year statute of limitations as to claims against the employees and/or agents. See Tenn. Code Ann. §§ 28-3-104(a)(1), 29-26-116(a)(1). Applying the operation-of-law exception, the trial court correctly concluded that the Plaintiff's vicarious liability claim against the Defendant should be dismissed, see Abshure, 325 S.W.3d at 106; Creech, 281 S.W.3d at 366, unless the operation-of-law exception conflicts with the HCLA.

Under Tennessee common law, vicarious liability may be imposed upon a principal for the negligent acts of its agent so long as the agent acts within the scope of the agent's actual or apparent authority. See, e.g., Abshure, 325 S.W.3d at 105; Boren ex rel. Boren v. Weeks, 251 S.W.3d 426, 432 (Tenn. 2008). Typically, a plaintiff may choose to sue a principal, the principal's agent, or both. Abshure, 325 S.W.3d at 105. However, as previously explained, this Court has identified certain instances in which it is "improper to permit a plaintiff to proceed solely against a principal based on its vicarious liability for the conduct of an agent." Id. at 106. Among those instances is that a plaintiff may not proceed solely against a principal based on its vicarious liability for the conduct of an agent "when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal." Id.; see also Creech, 281 S.W.3d at 366.

The facts of this case are not on all fours with the facts of this Court's precedents that addressed the operation-of-law exception. For instance, in Creech, this Court rejected liability as to the principal on the plaintiff's amended complaint that added a vicarious liability claim—not included initially—after any claim as to the agents was barred by operation of law. In that case, the operation-of-law exception arose from the doctrine of res judicata. Creech, 281 S.W.3d at 371, 376, 383. As this Court later noted, Creech involved a belated effort to amend a complaint when the plaintiff did not assert vicarious liability upon first filing suit. Abshure, 325 S.W.3d at 111.

On the other hand, in Abshure, this Court allowed a vicarious liability claim to proceed when the plaintiffs timely alleged vicarious liability before medical malpractice claims against the agent were barred, even though such claims were later barred by operation of law, in that case by the statute of repose. Id. at 101–02, 102 n.3, 112. The result flowed from the fact that the plaintiffs had filed a proper vicarious liability claim against the principal before their claims against the agent were barred by operation of law. Id. at 112.

Unlike Creech, the Plaintiff in this case alleged vicarious liability in the initial complaint rather than attempting to add the claim after having initially omitted it. Unlike Abshure, the Plaintiff did not file suit before claims against the Defendant's employees and/or agents were barred. Regardless of the specific factual situation, the key principle from our precedents is that the operation-of-law "limitation arises when the plaintiff attempts to assert a vicarious liability claim against the principal after its right to assert a claim against the agent has become procedurally barred." Id. at 110. In this case, the Plaintiff did exactly what this key principle prohibits. At the time the Plaintiff filed suit against the Defendant—alleging, in part, vicarious liability—any health care liability claims against the Defendant's employees and/or agents were procedurally barred by operation of law—that is, by the expiration of the one-year statute of limitations. See JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC, No. 3:19-CV-00469, 2020 WL

5877131, at *15 (M.D. Tenn. Oct. 2, 2020); Smith v. Holston Med. Grp., PC, No 2:12-CV-72, 2013 WL 11478937, at *3–4 (E.D. Tenn. June 20, 2013).  Because any health care liability claims against the Defendant's employees and/or agents were procedurally barred by operation of law at the time the Plaintiff filed suit, the trial court correctly dismissed the Plaintiff's claim that was based on the Defendant's vicarious liability for the conduct of its employees and/or agents, unless the operation-of-law exception conflicts with the provisions of the HCLA.

## B. The Operation-of-Law Exception Does Not Conflict with the HCLA

Tennessee is a common law state, Hodge v. Craig, 382 S.W.3d 325, 337 (Tenn. 2012), and the operation-of-law exception developed through the common law.  Clearly, the General Assembly has the authority, within constitutional limits, to alter the common law legislatively.  See, e.g., McClay v. Airport Mgmt. Servs., Inc., 596 S.W.3d 686, 690 (Tenn. 2020); Lavin v. Jordon, 16 S.W.3d 362, 368 (Tenn. 2000).  Thus, I certainly agree with the majority that "[w]hen there is a conflict between the common law and a statute, the provision of the statute must prevail."  Graves, 148 S.W. at 242; see also Lavin, 16 S.W.3d at 368.  On the other hand, to the extent common law principles are not in conflict with a statute, the legislation "leaves the law as it was before its enactment."  Lavin, 16 S.W.3d at 368; see also Hodge, 382 S.W.3d at 338.

To determine whether a statute conflicts with the common law, this Court necessarily is called upon to construe the statute.  The typical rules of statutory construction apply.  See Shore v. Maple Lane Farms, LLC, 411 S.W.3d 405, 423 (Tenn. 2013).  For instance, the General Assembly is presumed to know the state of the existing law when it enacts legislation—including the state of the common law—and, thus, legislation is interpreted in light of the common law.  Seals v. H & F, Inc., 301 S.W.3d 237, 256–57 (Tenn. 2010) (Koch, J., concurring in part and dissenting in part); Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 899 (Tenn. 1992).  The touchstone and "most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope."  Yebuah v. Ctr. for Urological Treatment, PLC, 624 S.W.3d 481, 486 (Tenn. 2021) (quoting State v. Howard, 504 S.W.3d 260, 269 (Tenn. 2016)).

However, in the specific context of determining whether the common law conflicts with a statute, this Court must be mindful of additional principles employed to aid in construing the statute.  As a general matter, although the General Assembly has the authority to abrogate the common law, the intention to abrogate must be clear.  Howard, 504 S.W.3d at 270.  In recognition of this principle, courts do not broadly construe statutes that are in derogation of the common law.  Shore, 411 S.W.3d at 423.  Instead, "statutes in derogation of the common law are to be strictly construed and confined to their express terms."  Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 679 (Tenn. 2002) (quoting

- 5 -

Ezell v. Cockrell, 902 S.W.2d 394, 399 (Tenn. 1995)); see also Yebuah, 624 S.W.3d at 486 (stating that the common law is not displaced by a legislative enactment except to the extent required by the statute itself). The legislature need not affirmatively proscribe a common law principle to abrogate it, but courts should presume that the legislature acted with the expectation that a common law principle applies except when a statute's purpose to the contrary is evident. United States v. Texas, 507 U.S. 529, 534 (1993) (also stating that "to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law"); see also Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 599 (Tenn. 1999) (observing that strict construction "amounts to a recognition of a presumption against the legislature's intention to change existing law"). Stated another way, legislative acts should not be construed to displace the common law any further than they expressly declare or necessarily imply. Shore, 411 S.W.3d at 423; Seals, 301 S.W.3d at 257 (Koch, J., concurring in part and dissenting in part); In re Deskins' Estates, 381 S.W.2d 921, 922 (Tenn. 1964).

As the majority notes, there is no suggestion that the HCLA expressly abrogates the common law principle that it is improper to permit a plaintiff to proceed solely against a principal based on vicarious liability "when the plaintiff's claim against the agent is procedurally barred by operation of law before the plaintiff asserts a vicarious liability claim against the principal." Abshure, 325 S.W.3d at 105. Indeed, the text of the HCLA contains no such express language. See Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 536 (Tenn. 2002) (looking to "the clear and plain language" of a statute to determine whether it displaced a common law remedy); Heirs of Ellis v. Estate of Ellis, 71 S.W.3d 705, 712 (Tenn. 2002) (noting the absence of "express language" indicating that the General Assembly intended to revise the common law principle at issue). Thus, if the HCLA is to displace the operation-of-law exception, it must be by necessary implication. A necessary implication is not derived from mere consistency or compatibility with the legislation. Rather, a necessary implication is "one that is so strong in its probability that the contrary cannot reasonably be supposed." Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 55:3 (7th ed. 2012).

The majority concludes that application of the operation-of-law exception would directly conflict with the HCLA based on the interplay among certain primarily procedural statutory provisions. In particular, the HCLA requires pre-suit notice of a potential health care liability claim, as well as an accompanying waiting period before suit may be filed, but provides for an extension of the statute of limitations as to a health care provider when pre-suit notice is given to that provider. Tenn. Code Ann. § 29-26-121(a)(1), -121(c). Additionally, although the HCLA mandates pre-suit notice, it requires notice only as to those health care providers "that will be a named defendant." Id. § 29-26-121(a)(1). According to the majority, the operation-of-law exception cannot be squared with these provisions.

- 6 -

More specifically, the majority claims that the Plaintiff would face untenable options, the first of which would require the Plaintiff to file suit against the Defendant before the expiration of the one-year statute of limitations. The majority concludes that this option essentially nullifies the extension of the statute of limitations provided by the HCLA upon the Plaintiff's sending the Defendant the statutorily required pre-suit notice. I do not share the majority's view that this option essentially nullifies the extension of the statute of limitations. A plaintiff knows if it will assert a claim based on vicarious liability. Thus, a plaintiff is free to obtain the benefit of the extension of the statute of limitations by sending pre-suit notice to the agent(s) as well as the principal. Alternatively, a plaintiff also is free to file suit within the one-year statute of limitations and comply with the procedural requirements of the HCLA. I do not believe that the latter course of action—choosing to file suit within the one-year limitations period—would mean that the operation-of-law exception has essentially nullified the extension provision of the HCLA. Thus, in my view, these circumstances do not exhibit a legally sufficient conflict between the operation-of-law exception and the HCLA to displace the operation-of-law exception by necessary implication.

The other option would entail the Plaintiff's sending pre-suit notice to the Defendant's relevant employees and/or agents to obtain the benefit of the extension of the statute of limitations as to them. Thereafter, the Plaintiff simply could choose to sue only the Defendant. The majority concludes that this option cannot be squared with the HCLA's provision that requires pre-suit notice only as "to each health care provider that will be a named defendant." Id. § 29-26-121(a)(1). Alternatively, the Plaintiff could elect to sue the Defendant and its relevant employees and/or agents, but the majority concludes that this course of action would run afoul of the general common law principle that a plaintiff may choose to sue a principal, an agent, or both. As to this two-pronged option, I note that although the HCLA generally requires named defendants to have been sent pre-suit notice, it does not require that all who are sent pre-suit notice ultimately be named defendants. See id. § 29-26-121(a)(1). Thus, in my view, sending pre-suit notice to an agent but not later naming that agent as a defendant does not essentially nullify any provision of the HCLA.[1] Likewise, nothing about the operation-of-law exception requires a plaintiff, having sent pre-suit notices, to sue both the principal and its agents any more than it would require a plaintiff to sue only the principal or its agents. Rather, upon sending the required pre-suit notices, a plaintiff may choose how to proceed. Nothing about these circumstances demonstrates a legally sufficient conflict between the operation-of-law exception and the HCLA to displace the operation-of-law exception by necessary implication.

---

[1] Indeed, one purpose of the pre-suit notice requirement is to foster the possibility of dispute resolution or to bring focus to the dispute before a plaintiff actually sues any provider. See Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist., 549 S.W.3d 77, 86 (Tenn. 2018); Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc., 418 S.W.3d 547, 554 (Tenn. 2013). In other words, the HCLA clearly contemplates that a potential defendant may receive pre-suit notice and yet never become an actual defendant.

As this discussion makes clear, I recognize that the operation-of-law exception could introduce a tactical choice for a plaintiff, the resolution of which would depend on the facts surrounding the plaintiff's case. However, I do not agree that this circumstance reveals a legally sufficient conflict between the operation-of-law exception and the provisions of the HCLA so as to displace the operation-of-law exception. Nor do I believe that the common law principle cannot coexist with the provisions of the HCLA. The options detailed by the majority simply call for a strategic decision that is neither a Catch-22 nor a Hobson's choice. Unlike the majority, I do not believe that being faced with this tactical choice essentially nullifies or effectively negates any provision of the HCLA.

Because Tennessee is a common law state, the General Assembly often does not write upon a clean slate. See United States v. Texas, 507 U.S. at 534. Accordingly, this Court is called upon "to perceive the impact of major legislative innovations and to interweave the new legislative policies with the inherited body of common-law principles." Moragne v. States Marine Lines, Inc., 398 U.S. 375, 392 (1970). The majority makes a case that abrogating the operation-of-law exception is consistent or compatible with the legislative changes brought about by the HCLA, and I acknowledge its appeal. However, I do not believe that consistency or compatibility with legislation suffices to abrogate a common law principle by necessary implication. The bar should be, and is, higher. See Norman J. Singer & J.D. Shambie Singer, Sutherland Statutes and Statutory Construction § 55:3 (7th ed. 2012) (stating that a necessary implication is "one so strong in its probability that the contrary cannot reasonably be supposed").

The majority recognizes that a necessary implication is one "so strong in its probability that anything to the contrary would be unreasonable." Necessary Implication, Black's Law Dictionary (11th ed. 2019). According to the majority, the standard is met here because it would be unreasonable to deprive a plaintiff who wishes to sue only the principal of the HCLA's extension of the statute of limitations or force that plaintiff to give pre-suit notice to providers that will not be named defendants. I disagree. The common law principle and the HCLA easily can be interwoven, in that a plaintiff can comply with both. Because the two can coexist, it is not unreasonable to conclude that the General Assembly, when enacting the HCLA provisions, did not intend to abrogate the operation-of-law exception.[2] See Chelsea Hous. Auth. v. McLaughlin, 125 N.E.3d 711, 721 (Mass. 2019) (stating that a statute abrogates a common law principle by necessary implication when the principle "is so repugnant to and inconsistent with the statute that both cannot stand" (internal quotation marks omitted)). Accordingly, I do not believe that the Plaintiff

---

[2] The majority states that this Court has never adopted a "cannot coexist" standard. However, the majority does not indicate that the language is inconsistent with the high bar required for abrogation by necessary implication.

has carried the burden of demonstrating abrogation by necessary implication.[3]  I would hold that the common law principle does not conflict with the HCLA, and thus, the enactment of the HCLA did not displace the operation-of-law exception in health care liability actions.

### III. CONCLUSION

The Plaintiff filed suit against the Defendant alleging, in part, vicarious liability, but only after the right to assert a health care liability claim against the Defendant's employees and/or agents was procedurally barred by the applicable statute of limitations.  This circumstance implicates the operation-of-law exception and requires dismissal of the Plaintiff's claim that was based on the Defendant's vicarious liability for the conduct of its employees and/or agents.  Unlike the majority, I cannot conclude that the HCLA's provisions necessarily imply a legislative intent to abrogate the operation-of-law exception. I, therefore, respectfully dissent from the result reached by a majority of the Court.

_____
JEFFREY S. BIVINS, JUSTICE

---

[3] The party contending that legislation changed the common law bears the burden of showing that the legislature intended such a change.  Tome v. United States, 513 U.S. 150, 163 (1995).