# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
January 18, 2017 Session

## J.W. SMITH, ET AL. v. TIMBERPRO INC., ET AL.

**Appeal from the Circuit Court for Carroll County**
**No. 13CV76    Donald E. Parish, Judge**

_____

### No. W2016-00757-COA-R3-CV

_____

J.W. Smith d/b/a J.W. Smith Logging ("Smith") appeals the trial court's grant of summary judgment to Don Bush d/b/a Bush Forestry Equipment ("Bush") and Woodland Equipment, Inc. ("Woodland").  Smith filed this lawsuit against Bush and Woodland seeking damages for breach of contract and breach of express and implied warranties. His claims arose from his purchase of an allegedly defective harvester from Woodland. The trial court granted summary judgment to Bush based on the absence of contractual privity between Smith and Bush.  The trial court granted summary judgment to Woodland based on the absence of evidence that it breached any express warranties to Smith and based on a disclaimer of implied warranties included in its contract with Smith.  On appeal, Smith argues that the record contains issues of disputed fact as to (1) whether Bush was a joint-seller of the harvester with Woodland, (2) whether Woodland and Bush breached express warranties to Smith, and (3) whether the disclaimer of implied warranties was part of Smith's contract for purchase of the harvester.  We agree with the trial court that the record does not contain any evidence of contractual privity between Smith and Bush and therefore affirm the trial court's grant of summary judgment to Bush on all of Smith's claims.  We also agree that the record does not contain evidence that Woodland breached express warranties to Smith and therefore affirm the trial court's grant of summary judgment to Woodland on Smith's claim for breach of express warranties.  We do not agree, however, that the disclaimer of implied warranties was included in Smith's contract with Woodland for purchase of the harvester. We therefore reverse the trial court's grant of summary judgment to Woodland on Smith's claim for breach of implied warranties.  The judgment of the trial court is affirmed in part, reversed in part, and this case is remanded for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

W. Timothy Harvey, and Rebecca J. Garman, Clarksville, Tennessee, for the appellant, J.W. Smith d/b/a J.W. Smith Logging.

Fred N. McLean, Paris, Tennessee, for the appellee, Don Bush d/b/a Bush Forestry Equipment.

Kenneth R. Shuttleworth and Michelle Handelsman, Nashville, Tennessee, for the appellee, Woodland Equipment, Inc.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

Smith owns and operates a logging business based in Tennessee Ridge, Tennessee. In 2010, Smith decided to purchase a commercial harvester designed and manufactured by TimberPro, Inc. ("TimberPro"). Smith contacted Bush, a Tennessee TimberPro dealer, about purchasing a TimberPro harvester equipped with a Risley harvesting head. Bush referred Smith to Woodland, a Michigan TimberPro dealer, because he believed that Woodland would be better-suited to installing the harvesting head.

In April 2010, Smith and Woodland entered into a written contract, titled "Sales Order," for the sale of a TimberPro TL735B harvester equipped with a Risley Rolly II harvesting head. The Sales Order reflects Smith's agreement to pay Woodland $481,000 for the harvester, states that it constitutes the entire contract between Woodland and Smith, and includes the following reference to a TimberPro warranty policy:

The harvester was delivered to Smith in June 2010. Bush met with Smith when the harvester was delivered, ostensibly to help familiarize him with the harvester. During the meeting, Smith signed a document, titled "Delivery Report," which stated in part, "Having read the TimberPro Warranty Policy . . . I now have a working knowledge of [the harvester]."

The TimberPro warranty policy referenced in the Sales Order and Delivery Report states:

1. Product Warranty. Subject to the terms and conditions of this limited warranty, Timberpro, Inc. ("Timberpro") warrants to the original Purchaser only of 725 & 735 Series Machines that under normal use and conditions the machines will be free from defect in material and workmanship when used for their intended purpose for a period of one (1) year-from delivery to the Purchaser or 2000 machine hours, whichever occurs first.

. . .

**THIS LIMITED WARRANTY AND THE REMEDIES DESCRIBED HEREIN ARE PURCHASER'S SOLE AND EXCLUSIVE REMEDY, AND ARE OFFERED BY TIMBERPRO IN LIEU OF ALL OTHER WARRANTIES, GUARANTEES, AND/OR REMEDIES WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, IMPLIED WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE UNDER THE UNIFORM COMMERCIAL CODE, OR OTHER WARRANTIES OR GUARANTEES ARISING BY OPERATION OF LAW, ALL OF WHICH ARE HEREBY EXPRESSLY DISCLAIMED.**

In May 2013, the harvester was destroyed by a fire. In December 2013, Smith filed a complaint against Bush in the Carroll County Circuit Court in which he alleged that the fire was caused by a defect in the harvester's electrical system.[1] Later, Smith amended the complaint to include Woodland as a defendant. As amended, Smith's complaint alleged that Bush and Woodland were liable for, among other things, breach of contract, breach of express warranties, and breach of the implied warranties of merchantability and fitness.[2]

In December 2015, Woodland and Bush filed motions for summary judgment on Smith's contract and warranty claims. In their motions and supporting documents, Woodland and Bush asserted that Smith was bound by the terms of the TimberPro warranty policy, which provided a one-year limited warranty on the harvester and disclaimed all other warranties, including the implied warranties of merchantability and fitness. They argued that the trial court should dismiss Smith's warranty claims because

---

[1] Although Smith's complaint also named TimberPro as a defendant, the trial court granted summary judgment to TimberPro on all of Smith's claims, and Smith does not challenge the trial court's ruling with regard to TimberPro on appeal.

[2] Smith's complaint also asserted tort, products liability, and consumer protection claims against Bush and Woodland. In September 2015, the trial court granted summary judgment in favor of Bush and Woodland on those claims. Smith does not challenge the trial court's ruling with regard to those claims on appeal.

the only warranty on the harvester (the one-year limited warranty in the TimberPro warranty policy) expired before the fire that destroyed the harvester. Additionally, they argued that the trial court should dismiss Smith's contract claim because Smith failed to allege or demonstrate any other basis for a breach of contract. Alternatively, Bush also argued that Smith's warranty and contract claims against him should be dismissed because he was not in contractual privity with Smith.

In response, Smith argued that he was not bound by the TimberPro warranty policy because he did not receive a copy of it when he purchased the harvester. Additionally, Smith asserted that Woodland and/or Bush expressly warranted to him prior to the sale that the harvester would be "free from defects" and that "they would stand by their machines." He argued that the harvester's defective electrical system constituted a breach of that express warranty, a breach of the implied warranties of merchantability and fitness, and a breach of contract. Finally, Smith argued that there was a factual dispute as to whether Bush was a joint-seller of the harvester and therefore in contractual privity with Smith.

In March 2016, the trial court entered an order granting summary judgment in favor of Woodland and Bush. In relevant part, the trial court's order states:

> More specifically, with regards to Bush, based on the undisputed material facts, this Court finds that there is no contract between Bush and Plaintiff. Therefore, no claim for breach of contract or breach of warranty exists.
>
> With regards to Woodland, based on the undisputed material facts, Plaintiff has failed to show Woodland breached the Sales Contract with Plaintiff. Plaintiff has also failed to show Woodland made or breached any warranties to Plaintiff.
>
> The Court finds it is uncontradicted that any express warranty by the manufacturer, Timberpro, Inc., had long expired prior to the loss and all implied warranties, if any, were conspicuously waived. This Court finds that Plaintiff had the opportunity to, and did see and look at, the warranty. However, if Plaintiff did not, Plaintiff at a minimum had the opportunity to do so. Plaintiff cannot come back years later and assert there are implied warranties when he so plainly waived them years earlier.

Smith timely filed a notice of appeal from the trial court's order.

- 4 -

Smith raises the following issues on appeal, restated from his appellate brief:
1. Whether the trial court erred in granting summary judgment in favor of the defendants on Smith's claim for breach of express warranty.

2. Whether the trial court erred in granting summary judgment in favor of the defendants on Smith's claims for breach of the implied warranties of merchantability and fitness.

3. Whether the trial court erred in granting summary judgment in favor of the defendants on Smith's claim for breach of contract.

4. Whether the trial court erred in holding that there was no contractual privity between Bush and Smith.

5. Whether the trial court erred in holding that Smith was bound by the TimberPro warranty policy after holding that there was no contractual privity between TimberPro and Smith.

**STANDARD OF REVIEW**

This is an appeal from a grant of summary judgment. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. On appeal, we review a trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Id*. The following standards guide our de novo review:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is

appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264-65 (Tenn. 2015) (judicially adopting a summary judgment standard parallel to the statutory standard set forth in Tennessee Code Annotated section 20-16-101); *see also Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 39-40 (Tenn. 2016) (explaining that the *Rye* standard applies in lawsuits commenced after July 1, 2011, the date that the standards set forth in Tennessee Code Annotated section 20-16-101 became effective).

## DISCUSSION

### *Contractual Privity Between Bush and Smith*

First, we address whether the trial court erred in dismissing Smith's claims against Bush based on its determination that the two were not in contractual privity. On appeal, Smith does not challenge the trial court's conclusion that his claims against Bush fail in the absence of contractual privity. Rather, Smith argues that the trial court erred because there is a factual dispute as to whether Woodland and Bush acted together as joint-sellers of the harvester. This argument is premised on Smith's assertion that Woodland delivered the harvester to Bush, who then delivered it to Smith in exchange for a portion of Woodland's profits from the sale. As an initial matter, we note that Smith does not cite any legal authority to support this argument in his appellant's brief or reply brief, which could result in a waiver of the argument on appeal. *See, e.g., Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011). In any event, however, an agreement between Woodland and Bush for delivery of the harvester is not evidence of an agreement between Bush and Smith for sale of the harvester. As such, we are satisfied that the record does not contain any evidence from which a reasonable person could

- 6 -

conclude that a contract existed between Bush and Smith for sale of the harvester. We therefore affirm the trial court's grant of summary judgment to Bush on Smith's claims.[3]

### *Express Warranties*

Next, we address whether the trial court properly granted summary judgment in favor of Woodland on Smith's claim for breach of express warranties. Under the Tennessee Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Tenn. Code Ann. § 47-2-313(1)(a). To establish a prima facie claim for breach of an express warranty, a plaintiff must prove that (1) the seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) the buyer was, in fact, induced by the seller's acts; and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty. *Coffee v. Dowley Mfg., Inc.*, 187 F.Supp.2d 958, 969 (M. D. Tenn. 2002), *aff'd*, 89 Fed.Appx. 927 (6th Cir. 2003) (citing *H.B.H. Enters., Inc. v. Cates*, No. 03A01-9608-CV-00253, 1997 WL 76804, at *2 (Tenn. Ct. App. Feb. 25, 1997)). Smith argues that the trial court erred in granting summary judgment to Woodland on this issue because he relied on oral representations made by or on behalf of Woodland in purchasing the harvester. Specifically, Smith asserts that he was told prior to the sale that the harvester "would perform cut to length timber and would be free from defects and they would stand by their machines." We note, however, that the only material that Smith cites as evidence of an express warranty is a 2010 trade magazine article about his business. The article quotes *Smith* as stating, "They (TimberPro) have a good product[.] They stand by their machine." The article does not quote or reference any statements or affirmations made on behalf of Woodland. As such, we conclude that there is no evidence in the record to support Smith's contention that Woodland breached an express warranty related to the harvester. We therefore affirm the trial court's grant of summary judgment to Woodland on Smith's claim for breach of express warranties.

### *Implied Warranties of Merchantability and Fitness*

The next issue we address is whether the trial court properly granted summary judgment to Woodland on Smith's claim for breach of the implied warranties of merchantability and fitness. The trial court held that Woodland was entitled to judgment

---

[3] In his reply brief, Smith argues that our ruling on this issue could leave him without recourse if Woodland presents proof on remand that it did not sell the harvester to Smith. Notwithstanding the fact that such proof would not have any bearing on Bush's relationship with Smith, this argument is moot in light of Woodland's repeated acknowledgment–in the trial court and on appeal–that it sold the harvester to Smith.

on that claim as a matter of law because it conspicuously disclaimed any implied warranties in the TimberPro warranty policy. Smith argues that the trial court erred in reaching that conclusion because the TimberPro warranty policy was not part of his contract to purchase the harvester. In Tennessee, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tenn. Code Ann. § 47-2-314(1). Likewise, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Tenn. Code Ann. § 47-2-315. A seller may disclaim the implied warranties of merchantability and fitness for a particular purpose in writing only if the disclaimer is "conspicuous." Tenn. Code Ann. § 47-2-316(2).[4] Pursuant to the Tennessee Code, a disclaimer is conspicuous when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Tenn. Code Ann. § 47-1-201(10). The Tennessee Code further specifies that a heading or language in greater size than the surrounding text or in contrasting type, font, or color to the surrounding text is conspicuous. *Id*. Of course, a written disclaimer with those stylistic qualities must nonetheless be a part of the parties' agreement to be effective. *See Parton v. Mark Pirtle Oldsmobile-Cadillac-Isuzu, Inc.*, 730 S.W.2d 634, 637 (Tenn. Ct. App. 1987) ("At a minimum, the reallocation [of risk] must be physically conspicuous. Beyond that, it must have been manifested in a fashion comprehensible to the party against whom it is sought to be enforced.") (quoting J. Murray, *On Contracts* § 353 2d Revised Ed. (1974)). "The keys to an effective disclaimer are notice and assent, and one can neither notice nor assent to that which one has not seen." *Bd. of Dirs. Of City of Harriman Sch. Dist. v. Sw. Petroleum Corp.*, 757 S.W.2d 669, 676 (Tenn. Ct. App. 1998).

While the language in the TimberPro warranty policy has the stylistic qualities of a conspicuous disclaimer, Smith argues that there is a factual dispute as to whether it was part of his contract with Woodland. In support of that argument, Smith cites his deposition testimony that he was not aware of the TimberPro warranty policy until after he initiated this lawsuit. For its part, Woodland argues that the reference to a TimberPro warranty on the Sales Order was sufficient to notify Smith of the TimberPro warranty policy and bind him to its terms. We disagree with Woodland's argument. The requirement that a disclaimer of implied warranties be conspicuous is not satisfied by a contract's mere reference to the disclaimer in another document, regardless of whether the disclaimer is conspicuously printed in the document in which it appears. *See LeConte Props., LP v. Applied Flooring Sys., Inc.*, No. E2006-01122-COA-R3-CV, 2007 WL 1108904, at *6 (Tenn. Ct. App. Apr. 13, 2007); (holding that a reference in the contract to

---

[4] A disclaimer of the implied warranty of merchantability must also mention merchantability. Tenn. Code Ann. § 47-2-316(2).

"standard one (1) year warranty" did not constitute notice that the seller intended to limit the implied warranty of fitness); *see also Woodward v. Naylor Motor Sales*, 14 U.C.C. Rep. Serv. 1269 (Mich. Dist. Ct. 1974); *Koellmer v. Chrysler Motors Corp.*, 818 U.C.C. Rep. Serv. 668 (Conn. Cir. Ct. 1970). There is nothing in the Sales Order to indicate that Woodland intended to limit or disclaim any implied warranties on the harvester.[5] As such, Woodland cannot rely on the Sales Order as evidence that Smith agreed to the disclaimer. Woodland also argues that Smith's signature on the Delivery Report reflects that he was aware of and agreed to the TimberPro warranty policy. It is undisputed, however, that Smith signed the Delivery Report when the harvester was delivered in June 2010 and not when he actually purchased the harvester in April 2010. The delivery of a written warranty after the contract of sale has been entered into does not modify or negate the statutory obligations created by the sale. *Ford Motor Co. v. Taylor*, 446 S.W.2d 521, 532 (Tenn. Ct. App. 1969).

Smith testified in his deposition that he did not receive a copy of the Timberpro warranty policy at the time of the sale. Woodland has not presented any evidence that refutes Smith's testimony. As such, the record does not conclusively establish that the TimberPro warranty policy was part of the agreement between Woodland and Smith. For that reason, we reverse the trial court's grant of summary judgment to Woodland on Smith's claim for breach of the implied warranties of merchantability and fitness.[6]

### *Breach of Contract*

Finally, we briefly address Smith's argument that the trial court erred in granting summary judgment to Woodland on his claim for breach of contract. In the trial court and on appeal, Smith has argued that Woodland breached their contract by selling him a defective harvester. In advancing that argument, however, Smith has not specified what, if any, contractual terms that Woodland actually breached. Instead, it appears that Smith's breach of contract claim is based solely on Woodland's alleged breach of the terms implied in the contract by statute. To the extent that Smith's breach of contract claim is based on some alleged breach other than a breach of implied warranties, we affirm the trial court's grant of summary judgment to Woodland on that claim. To the extent that Smith's breach of contract claim is based solely on an alleged breach of implied warranties, we decline to discuss it further.

---

[5] Moreover, the Sales Order only references the TimberPro warranty policy as a whole; it does not contain a specific reference to the disclaimer of implied warranties in the TimberPro warranty policy.

[6] Smith also argues that the trial court's holding that he was bound by TimberPro's warranty policy is inconsistent with its previous ruling that he was not in contractual privity with TimberPro. In light of our resolution of the foregoing issue, discussion of that argument is pretermitted.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's grant of summary judgment to Bush.  We also affirm the trial court's grant of summary judgment to Woodland on Smith's claims for breach of contract and breach of express warranties.  However, we reverse the trial court's grant of summary judgment to Woodland on Smith's claim for breach of the implied warranties of merchantability and fitness.  This case is remanded to the trial court for such further proceedings as are necessary and consistent with this Opinion.  Costs of this appeal are taxed to the appellee, Woodland Equipment, Inc., for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE