# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 5, 2018 Session

## STATE OF TENNESSEE v. JONATHON TROTTER

**Appeal from the Circuit Court for Knox County**
**No. 2-264-16     William T. Ailor, Judge**

---

### No. E2018-00390-COA-R3-CV

---

This appeal concerns the unauthorized practice of law. The State of Tennessee ("the State") filed a complaint in the Circuit Court for Knox County ("the Trial Court") against Jonathon Trotter ("Trotter") alleging that he engaged in the unauthorized practice of law. Trotter had advertised on Facebook and Craigslist that, for a fee, he would prepare various legal documents for customers. Trotter, however, was not an attorney. The State filed a motion for summary judgment, which Trotter failed to reply to in a manner compliant with the Tennessee Rules of Civil Procedure. The Trial Court granted the State's motion with respect to liability. The Trial Court later assessed damages against Trotter. Trotter appeals, arguing material facts are disputed such that his case should survive summary judgment and proceed to trial. We find and hold that the State made a properly supported motion for summary judgment, and that Trotter failed to show that there is a genuine disputed issue of material fact. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

Gena Lewis, Knoxville, Tennessee, for the appellant, Jonathon Trotter.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Nate Casey, Assistant Attorney General, for the appellee, the State of Tennessee.

# OPINION

## Background

In June 2016, the State commenced a civil action against Trotter alleging that he had engaged in the unauthorized practice of law and also committed violations of the Tennessee Consumer Protection Act. Non-attorney Trotter had advertised on Facebook and Craigslist that, for a fee, he would prepare various legal documents for customers. One advertisement read:

> Don't want to pay those high priced attorney fees?? Then let our company prepare your documents for you. All documents are reviewed by an attorney. We prepare divorce, name changes, wills, power of attorney, chapter 7 bankruptcy, and many more. We do offer a payment plan as well. Call us today. . . .

The State has cited several examples of Trotter's practices. In one instance, Trotter cashed a check for $2,355 from Donna Branum, whose granddaughter Amber Carter was embroiled in a case with an insurance company. Trotter purported to negotiate with the insurance company on Carter's behalf and claimed he needed the money to resolve the issue. No settlement, however, was forthcoming. Branum later alleged Trotter failed to repay her the money, while Trotter states he did. In another instance, Trotter allegedly drew up a fake order signed by Judge Bill Swann in a custody case involving one Donna Jean Ruth. Judge Swann's name was misspelled on the order and the docket number was fake. Trotter asserts that the hoax signature actually resembles Ruth's writing rather than his.

In November 2016, some months after successfully obtaining an injunction against Trotter, the State filed a motion for summary judgment. In support of its motion, the State filed its statement of undisputed material facts. The State asserted the following, in part:

> 2. Defendant is not an attorney and is not licensed to practice law in the State of Tennessee. Complaint ¶ 10; Trotter Dep. 26:19-26:23.
> 3. Defendant has never attended law school or taken the Tennessee Bar Examination. Trotter Dep. 26:24-27:4.
> 4. Defendant has never graduated from college. Trotter Dep. 26:16-26:18.
> 5. In 2014, Defendant completed a 17-week paralegal certificate program at the University of Tennessee Conferences and Non-Credit Programs. Complaint ¶ 11; Trotter Dep. 25 :25-26:12.

-2-

6. Defendant Jonathon Trotter does business as several sole proprietorships: "Legal Alternatives, LLC," "Disability Advocacy of America," and "Mobile Notary," none of which have been registered with the Tennessee Secretary of State. Complaint ¶ 3; Trotter Dep. 47:6-49:2.

7. At all times relevant, Defendant has engaged in or affected the conduct of trade or commerce in Tennessee through the sale of legal and notary services to consumers and other persons in Tennessee. Complaint ¶ 9.

## DEFENDANT'S UNLAWFUL SOLICITATIONS

8. At all times relevant, Defendant generated most of his business by advertising and soliciting business on Facebook and Craigslist. Trotter Dep. 117:3-118:12.

***

35. Defendant has stated that he has a "lot of schooling" and compared himself, as a paralegal, to that of a nurse practitioner in the medical field. Ehlers Aff. 9.

36. Defendant has represented that he has drafted and filed legal documents for several hundred divorces. Stewart Aff. 7.

37. At a minimum, 58 people have responded to Defendant's solicitations on Facebook to perform legal services or to prepare legal documents. Dean Aff. ¶ 4.

38. At a minimum, six people have communicated with Defendant through email about hiring him to perform legal services or to prepare legal documents. Dean Aff. ¶ 5.

39. At a minimum, six people have paid Defendant a total of $4,351.00 in exchange for legal documents or services. Branum Aff: ¶ 9; Carter Aff. ¶¶ 10, 14; Dean Aff. ¶ 6; Ehlers Aff. ¶ 13; Frost Aff. ¶¶ 8-12; Pruett Aff. ¶¶ 9-10; Ruth Aff. ¶¶ 7, 11; Wilson Aff. ¶¶ 10, 15.

40. Most of the clients who have hired Defendant never received anything at all. Branum Aff. ¶¶ 9, 13; Carter Aff. ¶¶ 10, 14, 25-27; Dean Aff. ¶ 6; Ehlers Aff. ¶¶ 13, 16; Frost Aff. ¶¶ 8-12; Pruett Aff. ¶¶ 9-10; Wilson Aff. ¶¶ 10, 15.

41. Defendant has promised legal services that he cannot lawfully deliver. Carter Aff. ¶ 8.

42. Defendant has drafted fictitious court documents, complete with the forged signature of retired Judge Swann, in order to deceive a consumer. Ruth Aff. ¶¶ 4-8, 11-13; Swann Aff. ¶¶ 5-7.

43. Defendant has acted in a representative capacity for consumers. Carter Aff. ¶¶ 11-13; Ehlers Aff. ¶¶ 18-15.

44. Defendant has taken funds from a consumer intended to settle a controversy and misappropriated them for his own purposes. Branum Aff. ¶¶ 9-13; Carter Aff. ¶¶ 11-14, 27.

45. Defendant has harmed the legal rights and positions of vulnerable consumers. Ehlers Aff. ¶ 16; Carter Aff. ¶¶ 25-28; Ruth Aff. ¶¶ 4-7, 11, 14.

46. Defendant has previously admitted to practicing law without a license. Noah Aff. ¶ 9.

***

59. In September 2015, Amber Carter, a consumer from Oak Ridge, was involved in a dispute with an insurance company related to a car accident. Complaint ¶ 52; Carter Aff. ¶¶ 2-4.

60. When the insurance company demanded that the consumer pay $9,420 to resolve the accident, a friend referred Ms. Carter to Defendant for legal assistance. Complaint ¶ 52; Carter Aff. ¶¶ 3-5.

61. Defendant initially offered to draft and file a paper that would transfer Amber Carter's liability for the accident and reinstate her driver's license. Complaint ¶ 53; Carter Aff. ¶ 8.

62. Defendant offered to do this in exchange for $350, an amount that he said was half of what an attorney would charge for the same service. Amber Carter paid Defendant $350 for his services. Complaint ¶ 54; Carter Aff. ¶¶ 8-10.

63. Defendant advised Amber Carter that he believed that he could negotiate a settlement with the insurance company for $2,355, or 25% of their $9,420 demand amount. Ms. Carter agreed. Complaint ¶ 55; Carter Aff. ¶ 11.

64. Days later, Defendant counseled Amber Carter that he believed the insurance company would accept the offer. Complaint ¶ 56; Carter Aff. ¶¶. 12-13.

65. Defendant then advised Amber Carter that he needed the settlement check for $2,355 made out in Defendant's name because he was acting in Ms. Carter's "legal stead." Complaint ¶ 57; Carter Aff. ¶ 12.

66. Based on this representation, Amber Carter's grandmother wrote a check to Defendant for $2,355 to settle the dispute with the insurance company. Complaint ¶ 58; Carter Aff. ¶ 14.

67. Defendant cashed the check for $2,355 the same day. Complaint ¶ 59; Carter Aff. ¶ 14.

68. To date, Defendant has failed to forward the $2,355 settlement payment to the insurance company or to engage in any settlement discussions with the insurance company on behalf of Amber Carter. Complaint ¶ 60; Carter Aff. ¶ 27.

69. To date, Defendant has refused to provide a refund of the $2,355 settlement payment or of the $350 fee paid for his services. Complaint ¶ 61; Carter Aff. ¶ 25.

Three days before the scheduled December 8, 2016 hearing on the State's motion for summary judgment, Trotter filed a pro se "Answer to Motion for Summary Judgment." The day before the hearing, Trotter filed an affidavit in which he denied that he engaged in the unauthorized practice of law. In his affidavit, Trotter stated in part:

4. Ms. Carter paid for my services to speak with the insurance company on her behalf to try to resolve the dispute over Ms. Carter's car accident. I informed Ms. Carter that I was not an attorney and Ms. Carter executed a power of attorney for me to act as her agent with the insurance company. I gave the executed power of attorney to the State in conjunction with this case;

5. Ms. Carter gave me $2355 to offer the insurance company to resolve the dispute. When I contacted the insurance company, I spoke with the insurance company's employee, who was referred to as an "insurance adjuster;"

6. The insurance company declined to resolve the dispute and I returned the $2355 to Ms. Carter;

7. The above is the totality of the services I agreed to render for Ms. Carter;

8. I did mention to Ms. Carter that there were forms she could fill out to reinstate her driver's license and release her mother from liability for the car accident. Although Ms. Carter and I discussed a fee for these documents, Ms. Carter purchased them from me. If Ms. Carter had purchased the documents, I would have given her a packet of documents that included releases of liability and cost agreements for the various Knox County Courts. I would not have provided any legal advice or direction as to how to fill the documents out or which documents to select. Ms. Carter would have signed the forms pro se. As a courtesy, I would have delivered the forms for Ms. Carter. However, my action in delivering the forms would have been strictly that of a currier. Ms. Carter understood that I was not an attorney and that she would be purchasing a packet of pre-printed legal forms;

9. I never said I was an attorney or held myself out to be an attorney to Ms. Carter, her grandmother, the insurance company, the insurance adjuster or any other person associated with Ms. Carter's dispute;

10. I am a notary public and the State has offered no evidence to disprove that I am a notary. Likewise, the State has cited no authority that a notary must be an attorney to provide the services of a notary or charge for those services;

11. To the best of my knowledge, information and belief, the insurance company I contacted on Ms. Carter's behalf is not an attorney licensed to practice law in the State of Tennessee;

12. To the best of my knowledge, information and belief, the insurance adjuster I spoke with is not an attorney licensed to practice law in Tennessee;

13. To the best of my knowledge, information and belief, the insurance company's insured paid valuable consideration to employ the insurance company as the insured's agent for resolving disputes involving the insured's operation or ownership of an automobile;

14. To the best of my knowledge, information and belief, the insurance company paid valuable consideration to the insurance adjuster to resolve disputes involving the insurance company's insured's operation or ownership of an automobile;

15. Ogle, Elrod and Baril is a law firm that handles tort claims arising from car accidents. During the time I was employed there, I witnessed many discussions between the firm's attorneys and adjusters from various insurance companies. These adjusters made decisions regarding who was at fault for an accident and the extent of the damages, as well as requesting information and documents from the firm's attorneys. The adjusters entered into agreements that were binding on the adjusters' insured and the firm's client. Based upon my observations, none of the adjusters were licensed attorneys.

16. I did not do anything on behalf of Ms. Carter that the insurance company and its adjuster were not doing on behalf of their insured. In fact, I did much less. None of us were lawyers and none of us held ourselves out to be lawyers. If I engaged in the unauthorized practice of law in contacting the insurance company and its adjuster on behalf of Ms. Carter, then the insurance company and its adjuster were engaged in the unauthorized practice of law in responding on behalf of their insured;

17. The State wishes the court to enter the radical ruling that a person cannot employ an agent to informally discuss and try to resolve a dispute, but instead must hire an attorney. If this is the case, then the entire insurance industry is engaged in the unauthorized practice of law, because

neither the companies themselves nor their adjusters are attorneys and yet they routinely seek to resolve disputes involving their insureds (sometimes the disputes are with the insured and sometimes they are on behalf of the insured);

\*\*\*

23. These cases demonstrate that a person may employ an agent to engage in the informal resolution of disputes, even if the disputes have a legal dimension. The cases turn on whether the professional judgment of a lawyer is required, because of either the complexity of the issues involved or because the services will lead directly to a more formal adversarial proceeding. Here I asked the insurance company through its adjuster if their insured would agree to resolve the dispute for $2355. When the insurance company refused, I returned the money to Ms. Carter. Both the insured and Ms. Carter were free at that time to either employ the services of an attorney to represent them in the filing and answering of a complaint in court or to continue to try to resolve the dispute informally among themselves. There were no complex legal issues involved and nothing I (or the insurance adjuster) did would in itself trigger a formal legal proceeding.

\*\*\*

27. I hope the court will see that there are genuine disputes of material fact in regard to Ms. Carter and that the State's position is contrary to the law;

In January 2017, the Trial Court entered an order granting the State's motion for summary judgment. The Trial Court stated, in relevant part:

This cause came to be heard on December 8, 2016. The Defendant failed to respond with appropriate responsive filings to the State's Motion as required by Tenn. R. Civ. Proc. 56.03-.04.

\*\*\*

97. Defendant is not currently and never has been licensed to practice law in the State of Tennessee.

98. Nevertheless, Defendant has engaged in "law business" and the "practice of law," as defined in Tenn. Code Ann. § 23-3-101(1) and (3), by

directly or indirectly soliciting consumers to provide legal advice and legal documents in exchange for valuable consideration.

99. These solicitations constitute an attempt by Defendant to provide legal services to consumers that require the professional judgment of a lawyer.

100. Defendant has further engaged in "law business," as defined in Tenn. Code Ann. § 23-3-101(1), by acting or offering to act in a representative capacity and providing or offering to provide legal advice to multiple consumers in exchange for a fee.

101. Providing legal advice to consumers, drafting legal documents, and acting in the capacity of a consumer's legal representative for valuable consideration are *per se* violations of the UPL statute and require the "professional judgment of a lawyer." *See* Tenn. Code Ann. § 23-3-101(1); Tenn. Code Ann. § 23-3-103(a). Therefore, Defendant has engaged in law business and the practice of law in Tennessee in violation of Tenn. Code Ann. § 23-3-103(a).

\*\*\*

103. Beginning on at least November 29, 2013, Defendant has used his Facebook profile to solicit legal documents and legal advice to consumers for a fee.

104. These solicitations are deceptive because they tend to mislead consumers into believing that Defendant is willing, capable, and in possession of the requisite legal authority and oversight to prepare and provide legal documents and services when such is not the case.

105. Therefore, Defendant's solicitations constitute deceptive conduct under the TCPA because they mislead Tennessee consumers as to a matter of fact.

106. Defendant has also engaged in deceptive conduct that goes beyond his solicitations with consumers. In at least six instances, Defendant has taken money from consumers and never provided anything in return.

\*\*\*

112. To the extent that Defendant can provide proof to the State's satisfaction establishing that Amber Carter received a refund, the award of restitution to Amber Carter will be set off to that amount. In the event that the State is unsatisfied with Defendant's proof, upon Defendant's motion, the Court will hold a fact hearing to determine the existence of any refund to Amber Carter.

-8-

113. In this case, the State is aware of 9 consumers who have paid Defendant a total of $4,355 without receiving the promised legal documents or services. These consumers do not need to take any additional action to be eligible for full restitution and statutory interest from the Defendant. In order to include as many unknown victims as possible, there will be at least a 90 day time period from the date of this Order for additional consumers to come forward. Any additional consumers who have been harmed by Defendant will be eligible to obtain full restitution and statutory interest from Defendant. After the conclusion of the timeframe for consumers to come forward, the Director, through the Attorney General, will file a final list of consumers with the amounts owed to each and a statutory interest calculation through the date of filing. This list shall become a part of this Order for purposes of setting the amount of the restitution and statutory interest portion of this Judgment.

Represented by counsel at this stage of the proceedings below, Trotter filed a motion to alter or amend. Following a hearing, in September 2017 the Trial Court entered an order with respect to the outstanding issues in the case, including whether Amber Carter or her grandmother ever were reimbursed by Trotter. The Trial Court found they were not. The Trial Court stated in its order, in part:

Following a hearing on December 8, 201[6], the Court entered an order on January 4, 2017, finding Defendant Jonathon Trotter liable for violations of the Tennessee unauthorized practice of law statute, Tenn. Code Ann. § 23-3-101 *et seq.* (UPL Statute) and the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* (TCPA). The Court's order detailed its findings of fact and conclusions of law and issued a permanent injunction against Defendant along with a full award of restitution to Defendant's victims. The Court further ruled that the State is entitled to an award of civil penalties, attorney's fees, and costs, but reserved setting the respective award amounts for a subsequent hearing. The court also reserved the issue of the restitution owed to Amber Carter, if any. After entry of the order, Mr. Trotter retained counsel and filed a timely motion to alter or amend the judgment.

On June 2, 2017, the Court heard Plaintiff's motion for an assessment of civil penalties and attorney's fees and Defendant's motion for a fact hearing regarding restitution to consumer Amber Carter. The court reserved ruling on the Motion to Alter or Amend to allow Defendant an opportunity to amend it.

## II. FINDINGS OF FACT

1. Plaintiff has incurred at least $7,349 in reasonable costs and expenses investigating and prosecuting Defendant.

2. Donna Branum, the grandmother of Amber Carter, gave Defendant $2,355 to pay to State Farm as a negotiated settlement of a subrogation claim that State Farm had, as well as an additional $350.

3. Defendant claims to have given a cash refund of $2,355 to Donna Branum.

4. The Court, in listening to the testimony of the witnesses, is persuaded that Defendant previously made contradictory statements and did not return the money to either Ms. Branum or Ms. Carter.

5. Defendant's testimony was contradicted by his own witness, Victoria Miner and by the testimony of Amanda Dean.

6. Ms. Miner testified that when she and Defendant went to refund the money that Defendant approached the house and was in between Ms. Miner and whoever was at the door. Ms. Miner could not identify the person at the door or see if money was exchanged.

7. Defendant did not get any kind of receipt from whomever he met.

8. Ms. Miner indicated that she has short term memory loss that had been documented. She also testified that she was convicted of theft in 2016, although she did disclose that fact to the court.

9. The Court is convinced that Defendant's testimony was not truthful in this matter.

## III. ORDER

1. Defendant is hereby ordered to provide full restitution in the amount of $2,705 to Donna Branum.

2. The court finds an award of civil penalties to be appropriate.

3. Therefore, pursuant to Tenn. Code Ann. §§ 47-18-108(b)(3) and 23-3-103(c)(1), the Court hereby assesses a civil penalty of $7,300 against Defendant and payable to Plaintiff based on 73 violations of the TCPA and UPL Statute.

4. A significantly higher civil penalty in this case would be appropriate. However, Plaintiff has requested this amount in recognition of Defendant's financial condition.

5. Plaintiff's costs and expenses of $7,349 incurred investigating and prosecuting Defendant are reasonable.

6. Therefore, pursuant to Tenn. Code Ann. §§ 47-18-108(b)(4) and 23-3-103(c)(1), Defendant is hereby ordered to reimburse Plaintiff's costs and expenses of investigation and prosecution in the amount of $7,349.

7. Based on plaintiff's motion for an assessment of attorney's fees, the fee affidavit of Nate Casey, and the arguments of counsel, pursuant to Tenn. Code Ann. §§ 47-18-108(b)(4) and 23-3-103(c)(1), the Court awards Plaintiff $2,651 for its reasonable attorney's fees generated in the investigation and prosecution of Defendant.

8. This is a final order for which execution may issue.

In October 2017, Trotter filed an amended motion to alter or amend summary judgment. In a January 2018 order, the Trial Court denied Trotter's motion, stating as relevant:

1. Tennessee Rule of Civil Procedure 56 requires a respondent to a motion for summary judgment to submit countervailing evidence which they contend are material and as to which they contend exists a genuine issue to be tried.

2. There is nothing in Defendant's affidavit that disputes any of the material facts established by Plaintiff in support of its summary judgment motion.

3. Additionally, Defendant has never filed an answer and the Court could have granted default judgment at any time upon motion.

\*\*\*

Therefore, Defendant's motion is not well taken and is hereby denied in its entirety.

Trotter timely appealed to this Court.

## Discussion

Although not stated exactly as such, Trotter raises one issue on appeal: whether the Trial Court properly entered summary judgment in the State's favor when there were genuine disputes of material fact.

As our Supreme Court has instructed regarding appellate review of a trial court's ruling on a motion for summary judgment:

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

* * *

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id*. When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has

been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

With respect to the unauthorized practice of law, this Court has stated that "[c]ases involving the unauthorized practice of law are heavily fact-dependent" and "[t]hey require the courts to focus specifically on the conduct of the person alleged to be practicing law without a license." *Fifteenth Judicial Dist. Unified Bar Ass'n v. Glasgow*, No. M1996-00020-COA-R3-CV, 1999 WL 1128847, at *3 (Tenn. Ct. App. Dec. 10, 1999), *no appl. perm. appeal filed*. The "law business" is defined by statute as follows:

> (1) "Law business" means the advising or counseling for valuable consideration of any person as to any secular law, the drawing or the procuring of or assisting in the drawing for valuable consideration of any paper, document or instrument affecting or relating to secular rights, the doing of any act for valuable consideration in a representative capacity, obtaining or tending to secure for any person any property or property rights whatsoever, or the soliciting of clients directly or indirectly to provide such services;

Tenn. Code Ann. § 23-3-101 (1) (2009). The "practice of law" is defined thusly:

> (3) "Practice of law" means the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies, or the soliciting of clients directly or indirectly to provide such services.

Tenn. Code Ann. § 23-3-101 (3) (2009). "[A]cts included in Tenn. Code Ann. § 23-3-101 constitute the unauthorized practice of law if performed by a non-lawyer only when performing those acts requires the professional judgment of a lawyer." *Fifteenth Judicial Dist. Unified Bar Ass'n*, 1999 WL 1128847, at *3. In *Fifteenth Judicial Dist. Unified Bar*

*Ass'n*, we observed that "other courts have held that the sale of self-help legal kits or printed legal forms does not constitute the unauthorized practice of law as long as the seller provides the buyer no advice regarding which forms to use or how the forms should be filled out" while "sellers who do advise customers on which forms to use and how to fill them out have been fo[u]nd to be engaging in the practice of law." *Id.* at n. 4.

Trotter asserts that disputes of material fact preclude summary judgment in the present matter. In response, the State argues that Trotter failed to comply with Rule 56.03 of the Tennessee Rules of Civil Procedure in responding to its motion for summary judgment.[1] We previously have discussed Rule 56.03 of the Tennessee Rules of Civil Procedure and the consequences of failing to adhere to the rule:

> Courts consistently have emphasized that a party opposing a motion for summary judgment may not simply rest on its pleadings, but must affirmatively oppose the motion. Such opposition may be made by pointing to the evidence in the record which indicates disputed material facts. Rule 56.03 requires that a party opposing a motion for summary judgment must serve and file a response to the motion.

> The statements of material facts submitted by the parties on a motion for summary judgment are intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own. Although the trial court may, at its discretion, waive the requirements of the rule where appropriate, the court may also refuse to consider the factual contentions of a non-complying party even where such facts are ascertainable by the record. Thus the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party. Accordingly, failure to file a response in opposition to a motion for summary judgment generally will prove fatal in the trial court and upon appeal.

---

[1] Tenn. R. Civ. P. 56.03 provides as relevant: "Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment."

*Holland v. City of Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) (citations and quotation marks omitted).

We have carefully examined Trotter's untimely filed "Answer to Motion for Summary Judgment" and his affidavit filed on the eve of the summary judgment hearing. As found by the Trial Court, Trotter did not comply with Tenn. R. Civ. P. 56.03. Trotter denied generally that his activities amounted to the unauthorized practice of law. That is a legal argument and not a proper response to the State's statement of undisputed facts. What is more, Trotter failed to dispute each of the State's submitted facts let alone give any specific citations to the record disputing any material fact. The only dispute was whether Trotter ever reimbursed Amber Carter for his "services," and the Trial Court held a separate fact hearing to address that issue. By that point, the question of liability already had been adjudicated with the Trial Court's grant of the State's motion for summary judgment on the basis of the State's undisputed facts. It was incumbent upon Trotter to respond to the State's motion for summary judgment in a timely and appropriate manner as required by Rule 56.03 of the Tennessee Rules of Civil Procedure. He did not. As a result, the Trial Court could and did base its grant of summary judgment on those undisputed facts submitted by the State. We are aware that Trotter was acting pro se at the time. That, nevertheless, does not excuse him from complying with the rules.

Having established the undisputed facts for purposes of summary judgment, we now examine whether Trotter's conduct constituted the unauthorized practice of law as determined by the Trial Court. Summary judgment for the State is appropriate only if, given the undisputed material facts, the State is entitled to judgment as a matter of law. Trotter argues he was merely a hired agent and that he simply provided legal forms to customers. This is not the complete picture. Trotter advertised that he would "prepare" customer documents and that his work was reviewed by an attorney. Furthermore, Trotter deceived customers as to his credentials and legal background or lack thereof. All of these representations implied that Trotter had the requisite qualifications to decide which documents should be used and he could successfully draft these documents to suit customers' legal needs. Trotter had no such qualifications but ventured to offer legal assistance to members of the public. In so doing, Trotter crossed the line into the unauthorized practice of law. Trotter's notion of being a hired agent as opposed to a pseudo-attorney is a dubious distinction which we reject.

We, as did the Trial Court, conclude that Trotter failed to establish a genuine issue of material fact for trial and that the State is entitled to judgment as a matter of law. Therefore, the Trial Court's grant of summary judgment to the State is affirmed.

-15-

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Jonathon Trotter, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE