IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2020 Session

## MITZI BAYNE RUTH, ET AL. v. HOME HEALTH CARE OF MIDDLE TENNESSEE, LLC., ET AL.

Appeal from the Chancery Court for Bradley County
No. 2016-CV-257          Jerri S. Bryant, Chancellor

_____

### No. E2019-01178-COA-R3-CV
_____

This is a breach of contract action in which Plaintiffs sought to recover the balance of a promissory note executed to secure payment for of a deceased owner's interest in the defendant company and to recover on a guaranty to secure the note. Defendants conceded that they did not pay the note according to its terms and counterclaimed, asserting that Plaintiffs breached a separate agreement which required the deceased owner's estate to file amended tax returns and tender payment to the Internal Revenue Service for taxes which had been paid on behalf of the deceased owner by the company. The parties filed cross motions for summary judgment; the court granted Plaintiffs' motion, denied Defendants' motion, and dismissed Defendants' counterclaim. Finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Dudley W. Taylor, Knoxville, Tennessee, for the appellants, Home Health Care of Middle Tennessee, LLC; B. Fred Allred, III; and Brenda Allred.

C. Crews Townsend and Michael J. Dumitru, Chattanooga, Tennessee, for the appellees, Mitzi Bayne Ruth, and Estate of Fred W. Bayne.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

The parties in this case come before us for the third time. Home Health Care of Middle Tennessee, LLC, ("HHMT") was owned by B. Fred Allred, III, and Fred W.

Bayne, with each owning a one-half membership interest. After Mr. Bayne passed away in 2007, Mr. Allred attempted unsuccessfully to purchase Mr. Bayne's membership interest from his estate, leading Ms. Mitzi Bayne Ruth, executrix of the estate, to file suit against HHC and Mr. Allred. In the opinion rendered in the first appeal, the nature and purpose of the suit, and the events that led to the first appeal, were summarized as follows:[1]

> Mitzi Bayne Ruth, executrix of the Estate of Fred W. Bayne ("Executrix"), the Estate of Fred W. Bayne ("the Estate"), and Home Health Care of East Tennessee, Inc. ("HHC East") sued Home Health Care of Middle Tennessee, LLC ("the Company") and B. Fred Allred, III ("Allred") seeking, among other things, a declaratory judgment that Fred W. Bayne's death was an event triggering dissolution of the Company. Both plaintiffs and defendants filed motions for partial summary judgment. After a hearing, the Trial Court entered an order granting plaintiffs' motion for partial summary judgment finding and holding, *inter alia,* that Fred W. Bayne's death was a liquidating event triggering the dissolution of the Company pursuant to the Company's Operating Agreement, and that Allred did not have the right pursuant to the Operating Agreement to purchase Fred W. Bayne's membership interest and continue the Company business.

*Ruth v. Home Health Care of Middle Tennessee, LLC*, No. E2009-00845-COA-R3-CV, 2010 WL 744936, at \*1 (Tenn. Ct. App. Mar. 3, 2010). We held that the Operating Agreement was ambiguous, vacated the award of partial summary judgment, and remanded the case for the trial court "to determine the intent of the parties to the ambiguous Operating Agreement, and whether a dissolution of the Company is required pursuant to the Operating Agreement." *Id.* at \*6.

Following the remand, the trial court conducted an evidentiary hearing, the outcome of which was summarized in the decision rendered in the second appeal:

> The Trial Court concluded that the above summarized evidence showed that Bayne and Allred intended to keep their interest at 50% each and to part ways upon a member's death. The Court also found the evidence also showed that the parties intended that neither party would ever hold a majority interest, thus Allred did not hold the "majority interest" required under the Operating Agreement to purchase Bayne's membership interest and to continue to operate the Company. Based on these findings of fact as to the intent of the parties, the Trial Court held that the Operating Agreement requires that HHC–MT must be dissolved. The Court retained continuing jurisdiction to supervise the dissolution of the Company and

---

[1] Mr. Allred and HHC were the appellants in the first appeal.

ordered the defendants to render an accounting of the operations of the Company from February 9, 2007 forward and the Court stated that, if needed, it would conduct a second trial to address any issues that arise from the accounting. Although this judgment was not final, the Trial Court granted the parties permission "to seek an interlocutory appeal with respect to the Court's order regarding dissolution ... and the Court's findings of fact and conclusions of law regarding the parties intent under the Operating Agreement with respect to dissolution.["]

*Ruth v. Home Health Care of Middle Tennessee, LLC*, No. E2011-02681-COA-R3CV, 2012 WL 4483005, at *3 (Tenn. Ct. App. Oct. 1, 2012). We affirmed the trial court's judgment and remanded the case for further proceedings.

The suit was resolved when the parties entered into a Redemption, Liquidation and Settlement Agreement ("the Agreement") on March 31, 2014. The Agreement provided that HHMT and the Allreds (collectively, "Defendants") would purchase the Estate's (collectively, with Ms. Ruth, "Plaintiffs") interest in HHMT for $4.9 million, with $3.5 million to be paid immediately, and the remaining $1.4 million to be paid in three installments: $400,000 to be paid by July 31, 2014; $500,000 to be paid by January 31, 2015; and $500,000 to be paid by July 31, 2015. The balance of the purchase price was memorialized in a Promissory Note executed by HHMT and secured by a Guaranty Agreement executed by Fred and Brenda Allred.

Defendants failed to make the final payment that was due on July 31, 2015, as a result of which Plaintiffs filed this action on December 15, 2016, alleging breach of contract. Defendants answered, admitting to nonpayment, and filed a counterclaim, asserting that Plaintiffs breached sections 11(c) and (d) of the Agreement, which addressed how the parties would proceed regarding tax matters.[2] In due course, Plaintiffs

---

[2] Section 11, entitled "Tax Matters", of the Agreement provides, in pertinent part:

(a) Amendment of Company Returns. HHMT shall timely prepare and file, or cause to be timely prepared and filed, amended Form 1065 federal income tax returns for HHMT for all taxable periods ending after the date of death of Fred W. Bayne, including any short period tax return, up to and through the taxable year ending December 31, 2013, in a manner consistent with the Bayne Estate being an owner of fifty percent (50%) of the membership interests of HHMT and entitled to a distributive share of fifty percent (50%) of all items of income, gain, deduction or loss attributable to HHMT. Company shall permit the Bayne Estate to review and comment on each such amended tax return not heretofore filed with the IRS at least twenty (20) days prior to filing and all reasonable comments provided with respect to such tax returns by the Bayne Estate shall be incorporated in the amended tax return.

***

(c) Amendment of Bayne Estate Returns. The Bayne Estate shall timely prepare and file

answered the counterclaim. Defendants thereafter moved to amend the counterclaim; the motion was granted by agreed order. Defendants then moved for summary judgment, supporting the motion with a Rule 56.03 statement of material facts and fifteen exhibits.[3] Plaintiffs also moved for summary judgment, supporting their motion with a Rule 56.03 statement of material facts and eleven exhibits.[4] The court held a hearing on the motions on January 9, 2019, and entered an order on May 31 granting Plaintiffs' motion and dismissing Defendants' counterclaim, and denying Defendants' motion. Defendants appeal, contending that Plaintiffs are not entitled to summary judgment because there is a genuine issue of fact as to whether they filed the amended return and paid the taxes; in addition, Defendants contend that they are entitled to judgment on their counterclaim.

## II. STANDARD OF REVIEW

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment *de novo*, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare– Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015), our Supreme Court adopted the standard applicable to summary judgment practice under Federal Rule 56, holding that:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential

---

or cause to be prepared and filed amended income tax returns for the Bayne Estate reporting any revised distributive share amounts related to HHMT for all taxable periods for which the statute of limitations remains open and, subject to the Bayne Estate's rights under subsection (e) below, shall pay, or provide for the payment of, the taxes shown as due on such tax returns.

(d) Tax Reporting. The parties shall each file all required federal, state, and local income tax returns and related returns and reports in a manner consistent with the foregoing provisions of this Section 11. In the event a party does not comply with the preceding sentence, the non-complying party shall indemnify and hold the other party harmless from all cost, liability, and damage that such other party may incur (including, without limitation, incremental tax liabilities, legal fees, accounting fees, and other expenses) as a consequence of such failure to comply.

[3] Defendants filed two supplements to the motion, both of which included a supplement to the statement of material facts.

[4] Plaintiffs also supplemented their motion.

element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. . . . [S]ummary judgment should be granted if the nonmoving party's evidence at the summary judgment stage is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06.

*Id.* at 264-65 (emphasis in original). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. The Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. July 22, 2019) (quoting *Rye*, 477 S.W.3d at 265)).

### III. ANALYSIS

Plaintiffs moved for summary judgment to collect the balance on the Promissory Note; Defendants moved for summary judgment on Plaintiffs' claim and their counterclaim. Defendants also contended in their opposition to Plaintiffs' motion that there is a genuine issue of material fact as to whether Plaintiffs filed an amended return and paid the appropriate taxes on their portion of the income from HHMT. The common question presented by both motions is whether the Estate filed the amended return and paid the appropriate taxes in accordance with the Agreement; the question before us is whether the evidence as to that question conflicts. If so, we deny Plaintiffs' motion and proceed to address the counterclaim; if not, we affirm the grant of summary judgment to Plaintiffs.

The basis of Defendants' counterclaim as well as their opposition to Plaintiffs' motion was predicated on Defendants' contention that Plaintiffs breached the Agreement.[5] To sustain their dual burden — as movant for summary judgment on their

---

[5] In the original counterclaim, the Allred Defendants asserted that Plaintiffs breached the Agreement by not paying taxes on the Estate's portion of income from HHMT for 2009, and that the failure deprived the Allreds from receiving a reimbursement of the taxes HHMT paid on the Estate's portion of the 2009 income; they sought to recover from the Estate the amount of taxes the Estate should have paid. Defendants moved to amend the counterclaim on September 13, 2018, and an order allowing the

counterclaim and as opponent of Plaintiffs' motion to demonstrate a genuine issue of material fact — Defendants filed the affidavit of their attorney, Dudley Taylor, along with the following exhibits: email correspondence between Mr. Taylor and his assistant, Joyce Fahl; the Agreement; a copy of certified mail envelope to the Internal Revenue Service from Mr. Taylor; the United States Court of Appeals decision in the case brought by the Allreds against the Internal Revenue Service to recover a refund of taxes paid by HHC as referenced in paragraph 3 of the counterclaim[6]; the Estate's K-1 Schedules for

---

amendment was entered on October 29. Defendants filed another motion to amend the counterclaim on January 18, 2019; the record does not contain an order allowing this amendment. Consequently, our analysis considers the counterclaim as amended on October 29, 2018, which states in pertinent part:

> * * *
> 2.     The Plaintiff Estate is in breach of its obligations under the Settlement Agreement, as set forth above in Defendants' Answer. The Allred Defendants therefore seek to recover judgment against the Plaintiff Estate for the damages sustained by them.
>
> 3.     The Allred Defendants were unable to recover their refund for the year 2009, along with interest, that would have been recoverable under the mitigation provisions if the Estate had paid taxes on the income of HHMT allocable to it for the year 2009. The amount therefore recoverable by the Allred Defendants, including accrued interest, is in excess of $500,000.
>
> 4.     Alternatively, the Allred Defendants are entitled to recover from the Plaintiff Estate the amount of taxes which the Estate should have paid (before any distribution deduction) with respect to the income of HHMT allocable to it under the Settlement Agreement for the years 2007, 2008, and 2009. This amount is unknown to the Allred Defendants at this time.
>
> * * *
> 6.     The Settlement Agreement obligates the Plaintiff Estate to file amended tax returns reporting 50% of the income of HHMT and to "pay, or provide for the payment of, the taxes shown as due on such tax returns." The Settlement Agreement further provides that a party failing to comply with the requirements of the Agreement relating to the tax matters "shall indemnify and hold the other party harmless from all costs, liability, and damage that such other party may incur (including, and without limitation, incremental tax liabilities, legal fees, accounting fees and other expenses) as a consequence of such failure to comply."
>
> 7.     In light of the above, and the failure of the Plaintiff to pay taxes on 50% of the income allocable to it by HHMT on the amended return, the individual Defendants were deprived of their right to a refund of $416,000 with interest accrued for more than 3 years. The Defendant Allreds therefore seek indemnification from Plaintiff with respect to the loss of this recovery of taxes with accrued interest and their legal and other fees and expenses incurred as a consequence of such failure.

[6] The IRS denied as untimely the Allreds' claim for a refund of taxes paid on HHC's income for 2009; the lawsuit contested the IRS determination and sought the refund.

the years 2007 to 2010; a log of correspondence that was created by Scott Ruth, Mitzi Bayne Ruth's husband, between the Estate and the Internal Revenue Service (Exhibit A-7); and Internal Revenue Service Account Transcripts for the Estate, containing notations of activity in the Estate's account for each tax year (Exhibit A-8). Defendants argued that Exhibit A-7, which states "None" under the "Amended Form" column for January 31, 2009, shows that the Estate did not file an amended return as required by Section 11 of the Agreement.

To support their motion, Plaintiffs submitted the responses of HHMT and the Allreds to Plaintiffs' First Requests for Admission. Pertinent to this issue are the following responses:

> Defendant Home Health Care of Middle Tennessee, LLC ("HHCMT"), by and through undersigned attorney and pursuant to Rule 36 of the Tennessee Rules of Civil Procedure, hereby responds as follows to the Plaintiffs' First Requests for Admission, all as follows:
>
> 1. Admit Defendant B. Fred Allred, III signed the Promissory Note in his capacity as Managing Member of Defendant HHMT.
>       Response: Admit.
>
> 2. Admit that you did not pay the Bayne Estate $500,000 on or before July 31, 2015.
>       Response: Admit.
>
> Defendants B. Fred Allred III and Brenda Allred (collectively, the "Allreds"), by and through undersigned attorney and pursuant to Rule 34 of the Tennessee Rules of Civil Procedure, hereby responds as follows to the Plaintiffs' First Requests for Admission:
>
> 1. Admit Defendant B. Fred Allred, III signed the Promissory Note in his capacity as Managing Member of Defendant HHMT.
>       Response: Admit.
>
> 2. Admit you signed the Guaranty.
>       Response: Admit.
>
> 3. Admit you did not direct HHMT to pay the Bayne Estate $500,000 before July 31, 2015.
>       Response: Admit.
>
> 4. Admit you have not paid the Bayne Estate the $500,000 payment due on July 31, 2015 under the Guaranty.

Response: Admit, but subject to the fact that $100,000 was tentatively paid toward this obligation by the Allreds' attorney

In response to Defendants' motion, Plaintiffs filed the declarations of Mr. Ruth and Ansley T. Moses, an attorney employed by the firm that represented the Plaintiffs; correspondence between the Estate and the IRS that was attached to Plaintiffs' Rule 56.03 statement of material facts; and the complaint and the district court and court of appeals opinions filed in the Allreds' suit against the IRS.

In his declaration, Scott Ruth stated that he created and maintained Exhibit A-7 "to record all correspondence with the IRS regarding the Estate's amended tax returns filed in accordance with the Agreement"; that "[th]e word 'None' under the 'Amended Form' column corresponding with the tax year ending January 31, 2009 [was] [his] shorthand for noting that [] no additional taxes were assessed for that tax year [] and the Estate received no correspondence from the IRS pertaining specifically to that tax year"; and that he had "personal knowledge that the Estate did file an amended return for the tax year ending January 31, 2009, because [he] assisted with the preparation of the return."

Mr. Moses' declaration stated that he assisted with the filing of the Estate's amended tax returns; and that, on June 10, 2014, he mailed a packet to the Internal Revenue Service, that "included a summary transmittal letter, original amended Forms 1041 for Estate's 2007-2012 taxable years (the "Amended Returns") and checks from the Estate for payments calculated as due and owing in connection with the Amended Returns."[7]  A copy of the packet that Mr. Moses sent to the IRS was attached as Exhibit 1 to his declaration, and the certified mail receipt, showing that the IRS received the packet from Mr. Moses, was attached as Exhibit 2.[8]

Plaintiffs also relied on an April 16, 2015 letter from the IRS which begins with a confirmation that the IRS received the packet from Mr. Moses along with a payment of $301,103.03 on June 13, 2014; the letter goes on to state that: "[t]he law provides a limited period of time for [the IRS] to charge and collect additional tax on [Estate's] Form 1041"; that the "legal period expired for the tax period shown above [January 31, 2010]"; that the IRS "will not assess tax for the additional income [] reported after the expiration date"; and that the IRS will "return [Estate's] payment . . . in a separate letter."

The complaint and orders entered in Allreds' suit against the IRS were attached to Plaintiffs' Rule 56.03 statement of material facts.  Pertinent to the issue before us, the Allreds asserted in the complaint that the "Estate had filed amended returns for the years

---

[7] The transmittal letter was attached as Exhibit F to Plaintiffs' Rule 56.03 statement.

[8] The record shows that Exhibit 1 was filed under seal pursuant to an agreed protective order; the exhibit is not included in the record on appeal.

2007 to 2013, in which the Estate reported 50% of the income realized by [HHC] for each of these years and have paid the increased taxes, accordingly"; that "refunds have been allowed and paid to [the Allreds] for all years but 2009"; and that as a result of the IRS denying the Allreds' refund claim, "the [Allreds] and the Bayne Estate have collectively paid federal income taxes on 150% of the income realized by [HHC] for the year 2009." The district court held that the Allreds failed to demonstrate that they timely filed their 2009 amended return, granted the IRS' motion to dismiss for lack of subject matter jurisdiction, and granted the IRS' motion to dismiss for failure to state a claim for relief; the court of appeals affirmed.[9]

The evidence submitted by Plaintiffs shows that they filed the amended return, made the necessary payment for the year at issue, and that the IRS rejected their payment; this demonstrates that there was no issue of material fact for trial and effectively negated the essential element of Defendants' counterclaim that Plaintiffs breached Section 11 of the Agreement. In their answer to the complaint, in their response to Plaintiffs' Requests for Admission, and in their response to Plaintiffs' Rule 56.03 statement, Defendants admitted that they did not make the $500,000 payment they were obliged to make, thus there was no issue of fact for trial as to their breach of the Promissory Note and Guaranty Agreement, and Plaintiffs were entitled to judgment on both motions.

---

[9] The district court also denied the Allreds' motion to amend the complaint to allow them to add the Estate as a defendant and to enter a judgment against the Estate for breach of contract; in denying the motion, the court stated:

> In plaintiffs' memorandum in support of their motion to amend the Complaint, they note that, pursuant to their agreement with the Bayne Estate, plaintiffs and the Bayne Estate agreed to file amended tax returns for the years 2007 through 2013. Plaintiffs allege the Bayne Estate did not perform under the agreement because it did not reimburse plaintiffs. But, that is not a term of the parties' contract. The Court notes that the agreement, a portion of which was filed as an exhibit to plaintiffs' memorandum, calls for the Bayne estate to "timely prepare and file" amended tax returns for the relevant years. The agreement does not, however, require the Bayne Estate to pay any amount to plaintiffs should those returns be rejected by the IRS. Plaintiff concedes the Bayne Estate did file the returns, which fulfilled its obligation.

(Internal docket citations omitted)

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court granting Plaintiffs' motion for summary judgment, dismissing Defendants' counterclaim, and denying Defendants' motion for summary judgment.

_____
RICHARD H. DINKINS, JUDGE